GILMAN v NORTHWEST AIRLINES, INC

Docket No. 200161. Submitted April 22, 1998, at Detroit. Decided June 9, 1998, at 9:15 A.M.

Rachel Gilman brought an action in the Oakland Circuit Court against Northwest Airlines, Inc., and Jay Jennings, alleging that the defendants wrongfully discharged her from employment in violation of an agreement that her employment could be terminated for just cause only and in violation of prohibitions in the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, against sex-based and age-based discrimination. The defendants moved for partial summary disposition, arguing that the sex- and age-discrimination claims are preempted by the Airline Deregulation Act, 49 USC 41713(b)(1). The court, Fred M. Mester, J., denied the motion. The defendants appealed by leave granted.

The Court of Appeals *held*:

The preemption clause of the Airline Deregulation Act, which prohibits states from enacting or enforcing laws or regulations related to airline prices, routes, or services, does not apply where the effect of the laws or regulations on prices, routes, or services is too tenuous, remote, or peripheral. The Civil Rights Act, insofar as it prohibits sex-based and age-based discrimination by airlines against their employees, affects airline prices, routes, or services in a manner that is too tenuous, remote, and peripheral to be preempted by the Airline Deregulation Act.

Affirmed.

CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — AIRLINE DEREGULATION ACT — PREEMPTION.

An action brought under the Civil Rights Act alleging sex-based or age-based employment discrimination by an airline is not preempted by the federal Airline Deregulation Act (49 USC 41713[b][1]; MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Donald J. Gasiorek* and *David F. Greco*), for the plaintiff.

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *George D. Mesritz* and *Donna J. Donati*), for the defendants.

Before: Jansen, P.J., and Kelly and Markey, JJ.

Per Curiam. Defendants, Northwest Airlines, Inc., and Jay Jennings, appeal by leave granted from the circuit court order denying their motion for partial summary disposition. We affirm.

On April 17, 1978, plaintiff, Rachel Gilman, commenced employment with defendant Northwest Airlines, Inc. Defendant Jennings became plaintiff's immediate supervisor in March of 1994. On September 1, 1994, Jennings placed plaintiff on a performance improvement plan. On December 12, 1994, plaintiff was terminated from her employment for alleged poor job performance. At the time of her termination, plaintiff was an account executive in Northwest's Detroit sales office.

On May 7, 1996, plaintiff filed a three-count complaint against defendants. Count one stated a claim for wrongful discharge wherein plaintiff alleged that she could be terminated for just cause only. Count two was a claim of age discrimination in violation of the Civil Rights Act[1] wherein plaintiff contended that she was treated differently than the younger employees and was terminated on the basis of her age. Count three was a claim of sex discrimination in violation of the Civil Rights Act wherein plaintiff claimed she was treated differently than the male employees and was terminated on the basis of her sex.

---

[1] MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*

Subsequently, defendants filed a motion for partial summary disposition pursuant to MCR 2.116(C)(4) and (8). They argued that plaintiff's sex- and age-discrimination claims, brought under the Civil Rights Act, were preempted by the Airline Deregulation Act (ADA), 49 USC 41713(b)(1), and thus, plaintiff should only be able to proceed with respect to her claim of breach of employment contract in state court. After a hearing on defendants' motion, the trial court concluded that plaintiff's claims were not preempted by the ADA and denied defendants' motion for partial summary disposition. We granted defendants' subsequent application for leave to appeal.

On appeal, defendants claim that the trial court erred in denying their motion for partial summary disposition because plaintiff's age- and sex-discrimination claims under the Civil Rights Act were preempted by the ADA.

The question presented in this appeal, whether state Civil Rights Act claims are preempted by the ADA, is one of first impression in Michigan. In order to decide the question presented in this case, it is necessary to examine the legislative intent behind the enactment of the ADA, and the preemption provision in particular.

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). Statutory language should be interpreted reasonably, considering the purpose of the act. *Barr v Mt Brighton Inc*, 215 Mich App 512, 516; 546 NW2d 273 (1996). Once the intention of the legislation is discovered, it must prevail over any construction arrived at through a con-

flicting rule of statutory construction. *Terzano v Wayne Co*, 216 Mich App 522, 527; 549 NW2d 606 (1997).

In determining the intent of the Legislature, the court must first look to the specific language used in the statute. *House Speaker v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). If the plain and ordinary meaning of the language is clear, judicial construction is normally not necessary or permitted. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992); *Heinz v Chicago Rd Investment Co*, 216 Mich App 289, 295; 549 NW2d 47 (1996). However, if reasonable minds could differ with respect to the meaning of a statute, judicial construction is appropriate. *Id.* The court must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the purpose of the statute. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994).

The ADA was enacted by Congress in 1978 in large part to deregulate domestic air transport. *American Airlines v Wolens*, 513 US 219; 115 S Ct 817; 130 L Ed 2d 715 (1995). Two of its primary purposes are the "maintenance of safety as the highest priority in air commerce" and the "placement of maximum reliance on competitive market forces." *Belgard v United Airlines*, 857 P2d 467, 471 (Colo App, 1993). In addition, the quality of the services rendered by an airline employee is of extreme importance because it directly affects the services the airline renders to its customers. *Id.* Thus, in order to ensure that the states would not interfere with federal deregulation or enact

similar laws, the ADA included a preemption clause that provides, in relevant part:

> Except as provided in this subsection a State, political subdivision of a State, or a political authority of at least two States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any air carrier that may provide air transportation under this subpart. [49 USC 41713(b)(1).]

Since the statute was enacted, there has been a clear indication from the courts that Congress intended this provision to be broadly interpreted. However, there is nothing in the language of the statute to suggest that Congress intended, nor does the case law suggest, that the preemption provision should be interpreted in such a broad and extensive manner as to completely shelter airlines from a state action by an employee who has allegedly been discriminated against by the airline in no connection whatsoever to the services it provides. Indeed, the ADA was concerned with the states' attempt to regulate airlines fares, routes, and services, not employment practices. *Delta Air Lines, Inc v New York State Div Of Human Rights*, 229 AD2d 132, 137; 652 NYS2d 253 (1996).

In *Morales v Trans World Airlines, Inc*, 504 US 374, 384; 112 S Ct 2031; 119 L Ed 2d 157 (1992), the Supreme Court explained that a state law is "related to" airline routes or services if it has "a connection with or reference to airline 'rates, routes, or services.'" The Court limited the scope of the preemptive effect of the ADA, however, by noting that "[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner" to have a preemptive effect. *Id.*, 390. In other words, if a provision in a

state statute is "too tenuous, remote, or peripheral" to have an effect on the prices, routes, or services provided by an airline, the ADA does not preempt the provision. This notion was reaffirmed in *Wolens, supra*, 225, where the Court stated that "[t]he ADA's preemption clause . . . ruled out 'only those state laws and regulations that specifically relate to and have more than a tangential connection with an airline's rates, routes or services.' " Hence, the decisive issue in the instant matter is not simply whether any claim brought under the Civil Rights Act is preempted by the ADA, but whether sex- and age-discrimination claims involving physical characteristics that are unrelated to an individual's job qualifications and too tenuous or peripheral to affect the airline's services fall within the scope of the preemptive provision of the ADA.

In support of their argument that plaintiff's state claims are preempted by the ADA, defendants rely primarily on a recent opinion of this Court, *Fitzpatrick v Simmons Airlines, Inc*, 218 Mich App 689, 690; 555 NW2d 479 (1996). In that case, the plaintiff was employed by a division of American Airlines and was terminated because he did not meet the height and weight standards promulgated by the defendant. *Id.* Thereafter, the plaintiff filed an action under the Civil Rights Act, alleging that he was unlawfully discharged because he was overweight according to the standards utilized by the defendant. *Id.* The defendant moved for summary disposition, maintaining that the plaintiff's claim was preempted by the Airline Deregulation Act, 49 USC 41713(b)(1). *Fitzpatrick, supra*, 690. The trial court granted the defendant's motion for summary disposition, and the plaintiff appealed,

arguing that the trial court erred because his claim was not preempted. *Id.*, 690-691.

On appeal, this Court explained that the first inquiry was whether preemption was expressed or implied in the statute at issue. *Id.* The language contained in the ADA expressly preempts a state from enacting any law relating to services of any air carrier. *Id.* Thus, the next question was whether the Civil Rights Act is a law relating to services of an air carrier. *Id.*, 691. Relying on *Morales, supra*, this Court found that it was. *Id.* This Court concluded that the provision of the Civil Rights Act that protected employees from discrimination based on height or weight was "related to" services of an air carrier, and that the Civil Rights Act would restrict the defendants' ability to select employees. *Fitzpatrick, supra*, 692-693. Accordingly, this Court denied the plaintiff's claim and affirmed the trial court's grant of summary disposition in favor of the defendants, finding that the plaintiff's state claim was preempted by the ADA. *Id.*, 693.

Defendants also cite *Belgard, supra*, 467, where the plaintiffs were denied employment as pilots because they had undergone eye surgery. The Colorado Court of Appeals determined that they could not pursue their claims under the state's handicap discrimination law because the law, when applied to an airline, had "a connection with" or "reference to" the airline's services. The Colorado Court of Appeals explained:

> [A]ny law or regulation that restricts an airline's selection of employees, based upon their physical characteristics, must necessarily have a connection with and reference to, and therefore must be one "relating to," the services to be rendered by that airline. [*Id.*, 471.]

We believe that the foregoing cases of preemption are distinguishable from the instant case. In particular, there is an important distinction to be drawn between the effect physical abilities or characteristics have on an airline's services and the effect one's age or sex has on the industry. For instance, it is easy to make sense of the airline industry's need to implement height and weight standards for certain positions in order to promote safety and efficiency when providing services. Thus, it is conceivable that an individual's weight or height may be sufficiently related to the safety and quality of services an air carrier can provide to permit preemption on this basis. Hence, we do not contest that the quality of airline employees, flight personnel in particular, as well as their physical capabilities and good health, will directly affect the services rendered by an airline. In fact, this element was such a concern of the airline industry that the federal legislation established minimum physical requirements for such personnel. See *Belgard, supra,* 471.

However, nowhere in the statute are there minimum requirements pertaining to an individual's age or gender to ensure top quality employees. Indeed, these qualities are, for the most part, wholly unrelated to an individual's ability to carry out duties and serve the airline industry. We are unable to discern how an individual's age or sex has any reasonable connection or relation to airline services or how a state law abridging unlawful discrimination on those bases will restrict an airline's authority to select employees. To the contrary, a state law prohibiting an airline from hiring or terminating employees on the basis of race, gender, or ethnicity is wholly unrelated to the ser-

vices it provides. See also *Ruggiero v AMR Corp*, 1995 WL 549010 (ND Cal, 1995) (holding the plaintiff's retaliatory discharge claim distinguishable from claims for discrimination based on physical characteristics because the ADA did not regulate wrongful termination); *Anderson v American Airlines, Inc*, 2 F3d 590 (CA 5, 1993) (holding that the ADA was passed to deregulate the airline industry and a claim for retaliatory discharge had too remote an effect on services to be preempted).

In fact, the United States Supreme Court entered a ruling consistent with this theory several years ago in *Colorado Anti-Discrimination Comm v Continental Air Lines, Inc*, 372 US 714; 83 S Ct 1022; 10 L Ed 2d 84 (1963). The Court held that a federal law did not preempt the enforcement against an air carrier of a Colorado statute prohibiting racial discrimination in the hiring of employees. The Court reasoned that the state law could not have an adverse effect on, or even interfere with, the required national law prohibiting discrimination, because a contrary requirement would not be enforceable in any state. In contrast to state statutes that regulate an airline's hiring practices with respect to physical characteristics (i.e., height, weight, handicap), state statutes that prohibit discrimination based on age and race do not raise the same potential for conflicting rules and inconsistencies because it is illegal, under the laws of all states, to discriminate against an employee on the basis of age or gender.

More recently, in *Abdu-Brisson v Delta Air Lines, Inc*, 128 F3d 77 (CA 2, 1997), the Second Circuit Court of Appeals held that the plaintiff's age discrimination claim was not preempted by the ADA because

the defendants were unable to establish how enforcement of the state laws would frustrate the purpose of the ADA. In particular, the Second Circuit Court of Appeals noted that the enforcement of New York's age discrimination law would not affect competition between airlines, which was the primary concern in enacting the ADA. *Id.*, 84. The court distinguished the case from *Morales* and *Wolens*, noting:

> [W]hether an airline discriminates on the basis of age (or race or sex) has little or nothing to do with competition or efficiency. Although one may argue that shedding older workers can result in savings, such savings will result in a better competitive position only indirectly, if at all. Moreover, to the extent that the scope of the protected group in age discrimination statutes may vary from jurisdiction to jurisdiction, state and local age discrimination laws are little different from generally applicable tax, environmental, or blue sky laws, which as a general matter are not preempted under the ADA. [*Id.*]

Similarly, in *Delta Air Lines v New York State Div of Human Rights, supra,* 137-138, the court upheld several age, disability, and marital status discrimination claims filed by employees under state law. In holding that the claims were not preempted by the ADA, the court remarked that "preemption . . . is not favored absent persuasive reasons either that the nature of the . . . subject matter" or the state regulations requires preemption or Congress has expressly prescribed preemption, and that "preemption must be determined on a case-by-case basis," ascertaining " 'whether the dangers and hardships of diverse regulation justify foreclosing a State from the exercise of its traditional powers.' " *Id.* (Citation omitted.) The court reasoned that compliance with the state human

rights laws in no way interfered with the airline's ability to comply with the ADA because the statute did not prescribe what amounted to discrimination against airline employees. *Id.*, 139. Moreover a finding either for or against the airline would not frustrate the purpose of the ADA. *Id.* Accordingly, the plaintiffs' claims were not preempted. *Id.*

We note that recently, in *Parise v Delta Air Lines*, 1997 WL 375296 (MD Fla, 1997), a United States District Court ruled that the ADA preempted state discrimination laws where the petitioners alleged age discrimination. However, that case is inapposite to the instant case because the conduct for which the plaintiff was ultimately terminated was determined to have directly affected the services of the airline.[2] The court explained that an airline's decision to terminate an agent for fear of customer safety was related to the airline's services and fell within the preemption clause of the ADA. *Id.* However, in so ruling, the court cautioned that "the ADA does not 'completely preempt' employment anti-discrimination laws ([only] if they 'relate to' airline 'rates, routes, or services,') . . . ." *Id.*, * 3.

The foregoing cases make it clear that while the ADA has been interpreted to have a broad preemptive sweep over state Civil Rights Act claims, there must, nonetheless, be an apparent connection or relation to the airline's routes, prices, or services, in order for the preemptive provision of the ADA to be applicable. Furthermore, we note that defendants did not introduce any evidence that plaintiff's claims would frus-

---

[2] The plaintiff was terminated for admittedly making numerous violent threats to his supervisor and co-worker.

trate the purposes of the ADA. Nor did defendants put forth any evidence to show that plaintiff's age- and sex-discrimination claims were connected with or related to the airline's routes, prices, or services. We hold, therefore, that plaintiff's claims were not preempted by the ADA. In light of our conclusion, the trial court properly denied defendants' motion for partial summary disposition.

Affirmed.