THOMAS v UNITED PARCEL SERVICE
ALEXANDER v UNITED PARCEL SERVICE

Docket Nos. 209699, 209991. Submitted October 13, 1999, at Detroit. Decided May 16, 2000, at 9:10 A.M.

Troy Thomas, an African-American male, brought an action in the Wayne Circuit Court against United Parcel Service (UPS) and Paul Maconchi, alleging racial and gender discrimination in violation of the state Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, and common-law defamation. The action was based on the termination of the plaintiff's employment by UPS for alleged dishonesty and statements by Maconchi, an employee of UPS, that the plaintiff had falsified his record regarding the amount of time he had worked. The trial court, Brian K. Zahra, J., granted the defendants' motion for summary disposition on the basis that 49 USC 41713, the preemption provision of the Federal Aviation Administration Authorization Act of 1994 (FAAAA), preempts claims of race and gender discrimination brought under the state Civil Rights Act. The plaintiff appealed. (Docket No. 209699).

Charles Alexander and other African-American males brought an action in the Wayne Circuit Court against the same defendants and making the same allegations. The court, Pamela R. Harwood, J., denied the defendants' motion for summary disposition, which also alleged that the plaintiffs' claims were preempted by the FAAAA. The defendants appealed by leave granted. (Docket No. 209991). The appeals were consolidated.

The Court of Appeals *held*:

1. A common-law tort claim is a state law action that can be preempted by federal law.

2. State statutes or actions having some connection with or reference to airline rates, routes, or services are preempted under a 1994 amendment of the FAAAA commonly known as the Airline Deregulation Act (ADA), 49 USC 41713(b)(1). The preempting of claims where a state statute's effect on an airline's rates, routes, or services is tenuous, remote, or peripheral should be approached cautiously. A state must enact or enforce a law affecting rates, routes, or services before the law is preempted by the ADA.

3. A claim must be shown to be derived from the enactment or enforcement of state law and to relate to airline rates, routes, or services, either by expressly referring to them or by having a significant economic effect on them, for the claim to be preempted by the ADA.

4. The plaintiffs' race and gender are wholly unrelated to the defendants' services or the plaintiffs' ability to carry out duties and serve the airline industry. While the ADA has a broad preemptive sweep over state Civil Rights Act claims, there must, nonetheless, be an apparent connection or relation to the airline's routes, prices, or services in order for the preemptive provision of the ADA to be applicable. No such connection or relation is presented by the plaintiffs' claims of racial and gender discrimination.

5. The defamation claims are simply too tenuous, remote, or peripheral to be subject to preemption.

The order in Docket No. 209699 must be reversed and the matter must be remanded. The order in Docket No. 209991 must be affirmed and the matter must be remanded.

GAGE, J., concurring with the result reached by the majority wrote separately to state that she does not believe that one's age or physical condition has no arguable connection to an airline's provision of services. Because issues regarding the plaintiffs' age or physical condition are not raised in this case, the majority's citation of decisions involving age or physical characteristics to support the proposition that age or physical characteristics is unrelated to airline services is unnecessary and should be deleted.

1. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — AIRLINE DEREGULATION ACT — PREEMPTION.

The Federal Aviation Administration Authorization Act of 1994, commonly known as the Airline Deregulation Act, does not preempt claims of race and gender discrimination in employment brought under the state Civil Rights Act (49 USC 41713; MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

2. CONFLICT OF LAWS — AIRLINE DEREGULATION ACT — PREEMPTION.

A state law claim can be preempted by the Federal Aviation Administration Authorization Act of 1994, commonly known as the Airline Deregulation Act, only upon a showing that the claim is derived from the enactment or enforcement of state law and that the claim relates to airline rates, routes, or services, either by expressly referring to them or by having a significant economic effect on them (49 USC 41713).

*O'Neal O. Wright & Assoc, P.C.* (by *O'Neal O. Wright* and *Lynette M. Bledsaw*), for the plaintiffs.

*Dykema Gossett PLLC* (by *Debra M. McCulloch* and *Deric J. Bomar*), for the defendants.

Before: JANSEN, P.J., and SAAD and GAGE, JJ.

JANSEN, P.J. In these consolidated appeals, we are asked to determine if the preemption provision of the Federal Aviation Administration Authorization Act of 1994 (FAAAA), 49 USC 41713, preempts claims of race and gender discrimination brought under the state Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* In Docket No. 209699, plaintiff appeals as of right from the trial court's order granting summary disposition in favor of defendants on the basis of preemption. We reverse. In Docket No. 209991, defendants appeal by leave granted from the trial court's order denying their motion for summary disposition. We affirm.

Plaintiffs, all African-American males, worked for defendant United Parcel Service (UPS) as delivery drivers. Contrary to company practice and procedure, the drivers allegedly took an unauthorized meal break while on duty, for which each driver claimed well over two hours of time for the period they were not actually working. Defendant Paul Maconchi, an employee of UPS, allegedly defamed plaintiffs by stating they had falsified their time records. In December 1996, plaintiffs' employment was terminated for dishonesty.

In July 1997, plaintiffs brought suit against defendants. The complaints alleged racial and gender discrimination in violation of the state Civil Rights Act,

and common-law defamation. Plaintiffs alleged in their complaints that white employees were not disciplined or terminated from employment for the same conduct. In each case, defendants moved for summary disposition under MCR 2.116(C)(4), alleging lack of subject-matter jurisdiction, on the ground that plaintiffs' claims were preempted by the FAAAA.

We review de novo a trial court's ruling regarding a motion for summary disposition under MCR 2.116(C)(4). *James v Commercial Carriers, Inc*, 230 Mich App 533, 536; 583 NW2d 913 (1998). Because a preemption determination involves legal questions of statutory interpretation, we likewise review these issues de novo. *Saginaw Co v John Sexton Corp of Michigan*, 232 Mich App 202, 214; 591 NW2d 52 (1998).

Whether a federal statute preempts state law is a question of congressional intent. *Hawaiian Airlines, Inc v Norris*, 512 US 246, 252; 114 S Ct 2239; 129 L Ed 2d 203 (1994); *Ryan v Brunswick Corp*, 454 Mich 20, 27; 557 NW2d 541 (1997). Congressional intent is to be gleaned from the text, structure, and purpose of the statute as a whole, including the manner in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law. *Id.*, p 28. The plain meaning of a statute must be given effect unless there is reason to believe that Congress intended a more restrictive reading. *Id.* "Federal provisions that invalidate state law must be narrowly tailored to support a presumption against preemption of state law." *Id.*, p 27. State police powers should not be superseded unless that is the clear and unequivocal intent of Congress, especially where

state regulation of matters relating to health and safety are concerned. *Id.*

Additionally, preemption of state law may be either express or implied. If express, the intent of Congress to preempt state law must be clearly stated in the statute's language or impliedly contained in the statute's structure and purpose. *Id.,* p 28. Implied preemption may exist in the form of conflict or field preemption. Conflict preemption preempts state law that is in direct conflict with federal law or with the purposes and objectives of Congress. *Id.* Field preemption preempts state law where federal law so thoroughly occupies a legislative field that it is reasonable to infer that Congress did not intend for states to supplement it. *Id.* A common-law tort claim is a state law action that can be preempted by federal law. *Id.,* pp 33-34.

Before 1978, interstate airline travel was heavily regulated by the federal government. Federal Aviation Act of 1958, PL 85-726 (codified at 49 USC 1301 *et seq.,* but now repealed). In 1978, Congress decided that open competition among airlines, especially in the area of rates and services, would benefit consumers and the economy. See 49 USC 1302 (recodified as 49 USC 40101). Thus, in 1978, Congress enacted the Airline Deregulation Act (ADA), 49 USC 41713(b)(1), formerly codified at 49 USC 1305, "[t]o ensure that the States would not undo federal deregulation with regulation of their own . . . ." *Morales v Trans World Airlines, Inc,* 504 US 374, 378; 112 S Ct 2031; 119 L Ed 2d 157 (1992).

In 1994, Congress amended the ADA and added subsection 41713(b)(4)(A),[1] which states as follows:

---

[1] This amendment is referred to as the Federal Aviation Administration Authorization Act of 1994. However, the statutory scheme is commonly

> *General rule.*—Except as provided in subparagraph (B), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier or carrier affiliated with a direct air carrier through common controlling ownership when such carrier is transporting property by aircraft or by motor vehicle (whether or not such property has had or will have a prior or subsequent air movement).

This subsection's language and purpose are essentially the same as the general preemption clause of the ADA, 49 USC 41713(b)(1),[2] but applies to all cargo air transportation carriers. Thus, cases interpreting the general preemption clause of the ADA may be applied by this Court in conducting our analysis under subsection 41713(b)(4)(A). *LaRosa v United Parcel Service, Inc*, 23 F Supp 2d 136 (D Mass, 1998).

The United States Supreme Court has considered ADA preemption in two cases. In *Morales, supra,* the United States Supreme Court considered whether subsection 41713(b)(1) preempted state attorneys general from enforcing state consumer protection laws regarding airline fares advertising. The United States Supreme Court held that the plain meaning of the term "relating to" in the preemption provision indicated a congressional intent to broaden the scope

---

referred to as the Airline Deregulation Act.

[2] This general preemption provision provides:

Preemption.—(1) Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

of preemption. *Morales, supra,* p 384. In other words, state statutes or actions having some " 'connection with or reference to' " airline rates, routes, or services are preempted under the ADA. *Id.,* quoting *Shaw v Delta Air Lines, Inc,* 463 US 85, 97; 103 S Ct 2890; 77 L Ed 2d 490 (1983). The United States Supreme Court concluded that "the obligations imposed by the [advertising] guidelines would have a significant impact upon the airlines' ability to market their product, and hence a significant impact upon the fares they charge." *Morales, supra,* p 390. Thus, the fares advertising guidelines were preempted. *Id.* However, the United States Supreme Court cautioned against preempting claims where the state statute's effect on an airline's rates, routes, or services was " 'tenuous, remote, or peripheral . . . .' " *Id.,* p 390, quoting *Shaw, supra,* p 100, n 21.

The United States Supreme Court later addressed the ADA's preemption provision in *American Airlines, Inc v Wolens,* 513 US 219; 115 S Ct 817; 130 L Ed 2d 715 (1995). In *Wolens,* participants in American Airlines' frequent flyer program challenged modifications to the program that devalued credits already earned by program participants. *Id.,* pp 224-225. The frequent flyer participants argued that the modifications violated the Illinois Consumer Fraud Act and also constituted a breach of contract. Interpreting the *Morales* decision, the Supreme Court concluded that American Airlines' frequent flyer program related to "rates, routes, or services." *Id.,* p 226. However, the Supreme Court emphasized that a state must also "enact or enforce" a law affecting rates, routes, or services before such law is preempted by the ADA. *Id.* The Supreme Court distinguished the consumer fraud

claim from the breach of contract claim and held that the consumer fraud claim involved the enactment or enforcement of state law and, therefore, was preempted. The state's enforcement of private contractual rights did not involve the enactment or enforcement of state law and, consequently, the Supreme Court held that the breach of contract claim was not preempted by the ADA. *Id.*, p 228.

Accordingly, for a claim to be preempted by the ADA, the following must be shown: (1) the claim must derive from the enactment or enforcement of state law, and (2) the claim must relate to airline rates, routes, or services, either by expressly referring to them or by having a significant economic effect on them. *Travel All Over the World, Inc v Kingdom of Saudi Arabia*, 73 F3d 1423, 1432 (CA 7, 1996). There is no dispute that plaintiffs' claims derive from the enactment or enforcement of state law. Thus, the question before this Court is whether the state Civil Rights Act's prohibition against racial and gender discrimination in employment "relates to" rates, routes, or services of an air carrier.

This Court addressed the issue of preemption by the ADA of claims brought under the state Civil Rights Act in *Gilman v Northwest Airlines, Inc*, 230 Mich App 293; 583 NW2d 536 (1998). In *Gilman*, the plaintiff was an account executive in Northwest Airlines' sales office and was terminated from her job, allegedly for poor performance. The plaintiff filed a three-count complaint, alleging claims of wrongful discharge, age discrimination, and gender discrimination under the state Civil Rights Act. After examining the legislative intent behind the ADA, this Court concluded that

there is nothing in the language of the statute to suggest
that Congress intended, nor does the case law suggest, that
the preemption provision should be interpreted in such a
broad and extensive manner as to completely shelter air-
lines from a state action by an employee who has allegedly
been discriminated against by the airline in no connection
whatsoever to the services it provides. [*Id.*, p 297.]

This Court in *Gilman* distinguished the prior deci-
sion of *Fitzpatrick v Simmons Airlines, Inc*, 218
Mich App 689; 555 NW2d 479 (1996), and the Colo-
rado Court of Appeals decision in *Belgard v United
Airlines*, 857 P2d 467 (Colo App, 1992), by noting a
particular distinction between "the effect physical
abilities or characteristics have on an airline's ser-
vices and the effect one's age or sex has on the indus-
try." *Gilman, supra*, p 300. This Court ruled that a
person's age or gender are, "for the most part, wholly
unrelated to an individual's ability to carry out duties
and serve the airline industry." *Id.* This Court was
"unable to discern how an individual's age or sex has
any reasonable connection or relation to airline ser-
vices or how a state law abridging unlawful discrimi-
nation on those bases will restrict an airline's author-
ity to select employees." *Id.* This Court in *Gilman*
concluded that "while the ADA has been interpreted to
have a broad preemptive sweep over state Civil
Rights Act claims, there must, nonetheless, be an
apparent connection or relation to the airline's routes,
prices, or services, in order for the preemptive provi-
sion of the ADA to be applicable." *Id.*, p 303.

Regardless of this Court's decision in *Gilman*,
defendants argue that the earlier holding in *Fitzpat-*

*rick* is controlling.[3] In *Fitzpatrick*, this Court affirmed the trial court's dismissal of the plaintiff's weight discrimination claim under the Civil Rights Act on the basis of preemption under the ADA. The plaintiff was a baggage handler whose employment was terminated for failure to meet the defendant airline's mandatory height and weight rule.

This Court in *Fitzpatrick* cited *Morales* for the proposition that "the words 'relating to' as used in the ADA expressed a broad preemptive purpose." *Fitzpatrick, supra,* p 691. This Court in *Fitzpatrick* relied on the Colorado Court of Appeals decision in *Belgard* in support of its finding of preemption. In *Belgard,* airline employees who had been denied jobs as pilots as a result of having undergone corrective eye surgery sued the airline, claiming that the airline violated a Colorado statute that prohibited discrimination based on a perceived physical handicap. Relying on the ADA's dual purposes of " 'maintenance of safety as the highest priority' " and " 'maximum reliance on competitive market forces,' " the court in *Belgard* determined that state regulation of hiring decisions made on the basis of a job applicant's "physical characteristics" was preempted as having a "connection with" the airline's services. *Belgard, supra,* pp 470-471. On the basis of the foregoing, this Court in *Fitzpatrick, supra,* concluded, " '[A]ny law or regulation that restricts an airline's selection of employees, based upon their physical characteristics, must necessarily have a connection with and reference to, and there-

---

[3] The *Fitzpatrick* decision has been criticized for failing to completely address the *Morales* prong of the two-pronged inquiry: whether the state statute expressly referred to airline rates, routes, or services, or had a significant economic effect on them. *LaRosa, supra.*

fore must be one "relating to," the services to be rendered by the airline.' " [*Fitzpatrick, supra,* p 692, quoting *Belgard, supra,* p 471.]

Defendants interpret *Fitzpatrick* as holding plaintiffs' state law racial and gender discrimination claims to be preempted by the ADA. The trial court in Docket No. 209991 refuted this interpretation and instead ruled that *Fitzpatrick* was correctly decided under its facts, but that the ADA's preemption provisions do not apply to all claims under the Civil Rights Act. We agree with the trial court.

*Gilman* is dispositive of the preemption issue presented here. Plaintiffs' race and gender are wholly unrelated to defendants' services. This view has also been set forth by the United States Court of Appeals for the Sixth Circuit, which recently held that "[n]either air safety nor market efficiency is appreciably hindered by the operation of state laws against racial discrimination." *Wellons v Northwest Airlines, Inc,* 165 F3d 493, 496 (CA 6, 1999). The court noted, "An employee's race, as opposed to his eyesight or physical size, has no arguable connection to safety." *Id.* Moreover, unlike the regulation of marketing practices at issue in *Morales, supra,* or the regulation of the frequent flyer programs at issue in *Wolens, supra,* " 'whether an airline discriminates on the basis of age (or race or sex) has little or nothing to do with competition or efficiency.' " *Wellons, supra,* p 496, quoting *Abdu-Brisson v Delta Air Lines, Inc,* 128 F3d 77, 84 (CA 2, 1997). Consequently, the court in *Wellons* held that the ADA did not preempt the plaintiff's state statutory race discrimination claim and related common-law tort claims. Accord *Parise v Delta Airlines, Inc,* 141 F3d 1463 (CA 11, 1998) (state statutory age dis-

crimination claim not preempted by the ADA); *Aloha Islandair, Inc v Tseu*, 128 F3d 1301 (CA 9, 1997) (state statutory physical disability claim not preempted by the ADA); *Abdu-Brisson, supra* (state statutory age discrimination claim not preempted by the ADA).

Defendants urge this Court to consider that plaintiffs' claims are preempted because "their terminations arose out of their conduct while delivering packages," which is the very "service" provided by UPS to its customers. Although this may be relevant to whether plaintiffs can survive a motion for summary disposition on the merits of their cases, it is inappropriate for this Court to weigh defendants' nondiscriminatory justification for discharging its employees as a basis for finding preemption. *Parise, supra*, p 1466.

Additionally, though not addressed by the trial court, plaintiffs' defamation claims survive defendants' preemption challenge. Plaintiffs' defamation claims are simply " 'too tenuous, remote, or peripheral' " to be subject to preemption. *Taj Mahal Travel, Inc v Delta Airlines, Inc*, 164 F3d 186, 195 (CA 3, 1998); *Abdu-Brisson, supra*, p 81. Moreover, preemption is inappropriate in the tort field for an eminently practical reason:

> As *Wolens* pointed out, the Department of Transportation has neither the authority nor the apparatus required to superintend contract disputes. See *Wolens*, 513 US at 232, 115 S Ct 817. That observation applies equally to tort disputes. It is significant that Congress retained the savings clause of the predecessor statute, which preserved "the remedies now existing at common law or by statute." *Id.* at 232, 115 S Ct 817 (*quoting* 49 USC § 1506). [*Taj Mahal Travel, supra*, p 194.]

The saving clause has been amended and recodified, and now states that "[a] remedy under this part is in addition to any other remedies provided by law." 49 USC 40120(c).

We conclude that plaintiffs' claims of racial and gender discrimination under the state Civil Rights Act and the common-law defamation claims are not related to the ADA and, therefore, are outside the scope of the federal act's preemption provision. We reverse in Docket No. 209699, affirm in Docket No. 209991, and remand for further proceedings.

SAAD, J., concurred.

GAGE, J. (concurring). I agree with the result reached by the majority, but would delete the majority opinion's references to age considerations. The majority correctly holds that air safety and services are not affected by state laws prohibiting discrimination based on race and gender. Therefore, I join in the result the majority reaches.

I do not agree, however, that age or one's physical condition has no arguable connection to an airline's provision of services. The majority cites decisions supporting the proposition that age or physical condition is unrelated to airline services, but these issues are not currently before us. I write separately to distance myself from the unnecessary citation of decisions involving age or physical characteristics.