# STATE OF MICHIGAN

# COURT OF APPEALS

LADONNA NEAL,

        Plaintiff-Appellant,

and

MERIDIAN HEALTH PLAN OF MICHIGAN,
also known as MHPM,

        Intervening Plaintiff-Appellee,

v

DETROIT RECEIVING HOSPITAL and
UNIVERSITY HEALTH CENTER, also known as
VHS RECEIVING HOSPITAL INC., also known
as LEGACY DMC, also known as LEGACY
ERH-UHC,
        Defendants,

and

DEPARTMENT OF HEALTH and HUMAN
SERVICES,

        Amicus Curiae.

FOR PUBLICATION
May 16, 2017
9:10 a.m.

No. 329733
Wayne Circuit Court
LC No. 13-004369-NH

Before: SERVITTO, P.J., and CAVANAGH and FORT HOOD, JJ.

CAVANAGH, J.

Plaintiff appeals as of right an opinion and order requiring her to pay the full amount of a Medicaid lien, $110,238.19, following the settlement of her medical malpractice action. We reverse the decision, vacate the order, and remand for further proceedings consistent with this opinion.

In April 2013, plaintiff filed a medical malpractice action. It is undisputed that plaintiff's medical care was paid for by Meridian Health Plan of Michigan, a Medicaid plan. Meridian

-1-

Health Plan was billed $298,869.10, but paid $110,283.19 for plaintiff's medical expenses and asserted a lien in that amount.

On March 20, 2015, after the parties reached a confidential settlement agreement, the trial court entered two stipulated orders dismissing plaintiff's lawsuit against all defendants.

On April 21, 2015, plaintiff filed a motion to reinstate the case to resolve the Medicaid lien with Meridian Health Plan.[1]  Plaintiff claimed that the confidential settlement agreement between the parties allocated the settlement funds as follows: 55% to non-economic damages, 40% to economic damages (lost earning capacity, attendant care, and household services), and 5% for medical expenses, totaling $26,775.  But, plaintiff argued, attempts to settle the Medicaid lien with First Recovery Group, which represented Meridian Health Plan with regard to its lien rights, were unsuccessful.  First Recovery Group relied on MCL 400.106(5) and claimed a right to recover the full amount of the Medicaid lien, $110,283.19, while plaintiff argued that MCL 400.106(5) was preempted by the Supremacy Clause of the United States Constitution.  That is, as set forth in the leading case of *Arkansas Dep't of Health & Human Servs v Ahlborn*, 547 US 268; 126 S Ct 1752; 164 L Ed 2d 459 (2006), the anti-lien provision, 42 USC 1396p(a)(1), invalidated MCL 400.106(5).  The *Ahlborn* Court held that states could not recover any amount in excess of the recipient's recovery for medical expenses.  And in this case, plaintiff argued, the parties stipulated to the proper allocation of damages and "that stipulation is reasonable and should be respected."  Thus, plaintiff requested the court to reinstate the case and enter an order requiring plaintiff to pay $26,775 in full settlement of the Medicaid lien.

Meridian Health Plan responded to plaintiff's motion to reinstate the case to resolve the Medicaid lien, arguing that it was entitled to recover its full lien amount as set forth in MCL 400.106(5), which was not preempted by the federal anti-lien provision.  "Plaintiff was statutorily obligated to assign her Medicaid recovery rights to [Meridian Health Plan] and *Ahlborn* only applied the anti-lien provision to the extent that the Medicaid lien recovery included attaching a lien to 'property' of the Medicaid recipient other than 'medical expenses.' "  Further, as the *Ahlborn* Court held, "the risk that parties to a tort suit will allocate away the State's interest can be avoided either by obtaining the State's advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision."  In this case, plaintiff claims to have conveniently—and improperly, "allocated away" the state's right to recover the full amount of its Medicaid lien but Meridian Health Plan neither participated in those negotiations nor agreed to such allocation.  Thus, Meridian Health Plan concurred with plaintiff's request to reinstate this case, but requested the trial court to enter an order requiring plaintiff to pay the full amount of its Medicaid lien, $110,238.19.

On July 8, 2015, plaintiff's motion to reinstate the case was granted.  On September 29, 2015, the trial court issued an opinion holding that Meridian Health Plan was entitled to recover the full amount of its Medicaid lien, $110,238.19.  The trial court noted that, under MCL 400.106(3) and (5), the state had first priority right against the net proceeds of a settlement in an

---

[1] On June 5, 2015, the trial court entered a stipulated order granting Meridian Health Plan leave to intervene as a party plaintiff for the sole purpose of resolving its Medicaid lien.

action involving a person receiving medical assistance. Further, the court held, the "medical expenses paid are a sum certain and the lien exists as to the amount paid." Thus, in this case, although Meridian Health Plan had been billed for $298,869.10 in medical expenses, it paid $110,238.19, which was the amount of its lien. The court rejected plaintiff's arguments that MCL 400.106(5) is preempted by the federal anti-lien provision and that the holding in *Ahlborn* barred Meridian Health Plan's claim for the entire amount of its lien. Plaintiff, as a Medicaid recipient, was obligated to assign the right to receive payments in reimbursement for medical care to Meridian Health Plan, MCL 400.106(5), as authorized by 42 USC 1396a(a)(25)(H), and such lien existed prior to and independent of the lawsuit or its subsequent settlement. Accordingly, the trial court held, Meridian Health Plan was entitled to recover the full amount of its lien asserted for medical expenses paid on behalf of plaintiff. An order was subsequently entered requiring plaintiff to pay Meridian Health Plan $110,238.19 to settle the Medicaid lien. This appeal followed.

Plaintiff argues that MCL 400.106(5) is preempted by the federal anti-lien provision, 42 USC 1396p(a)(1), which precludes Meridian Health Plan from recovering on its Medicaid lien an amount greater than the portion of the settlement proceeds designated as payment for medical expenses, $26,775. We agree, in part.

Issues of statutory interpretation, including those related to preemption, are reviewed de novo as questions of law. *Thomas v United Parcel Serv*, 241 Mich App 171, 174; 614 NW2d 707 (2000).

"Medicaid" is a program which provides medical assistance for the medically indigent under title XIX, 42 USC 1396 *et seq.*, of the Social Security Act. MCL 400.105(1); *Workman v Detroit Auto Inter-Ins Exch*, 404 Mich 477, 500; 274 NW2d 373 (1979). The Medicaid program is a cooperative funded by federal and state funds, and states participating in the program must make reasonable efforts to ascertain the legal liability of third parties to pay for the recipient's medical care. 42 USC 1396a(a)(25)(A). Where legal liability is found to exist, the state is to seek reimbursement. 42 USC 1396a(a)(25)(B). To facilitate the state's reimbursement from liable third parties, the state must enact laws under which it is deemed to have acquired the right to such recovery. 42 USC 1396a(a)(25)(H). Accordingly, a state's Medicaid plan must require the recipient to assign to the state any rights to payment for medical care from any third party as a condition of eligibility for Medicaid. 42 USC 1396k(a)(1)(A).

In an effort to comply with federal requirements of the Medicaid program, Michigan enacted MCL 400.106, which includes the state's subrogation and assignment rights related to the liability of a third party for a recipient's medical care.[2] The state is "subrogated to any right of recovery that a patient may have for the cost of [medical care and services] not to exceed the amount of funds expended by the state" for the care and treatment of the recipient. MCL 400.106(1)(b)(*ii*). And that recipient must execute and deliver an assignment of claim to the state to secure the state's right of recovery. *Id*. Accordingly, as set forth in MCL 400.106(3), a

---

[2] Our reference to "the state" means the state department, the department of community health, and/or a state contracted health plan as set forth in MCL 400.106.

recipient who received medical assistance from the state must notify the state when filing an action in which the state may have a right to recover expenses paid. And if a matter was settled after November 29, 2004 without providing proper notice to the state, the state can sue the recipient, the recipient's legal counsel, or both, to recover the medical expenses that were paid. MCL 400.106(4).

Further, MCL 400.106(5) provides that the state has first priority against the proceeds of the "net recovery" from any settlement or judgment in an action in which notice had been provided under MCL 400.106(3). With regard to the state's recovery or reimbursement, MCL 400.106(5) provides:

> The state department, the department of community health, and a contracted health plan shall recover the full cost of expenses paid under [the Social Welfare Act] unless the state department, the department of community health, or the contracted health plan agrees to accept an amount less than the full amount. If the individual [recipient] would recover less against the proceeds of the net recovery than the expenses paid under this act, the state department, department of community health, or contracted health plan, and the individual shall share equally in the proceeds of the net recovery. As used in this subsection, "net recovery" means the total settlement or judgment less the costs and fees incurred by or on behalf of the individual who obtains the settlement or judgment.

Plaintiff argues that MCL 400.106(5) is preempted by 42 USC 1396p(a)(1), an anti-lien provision which prevents the state from imposing a lien against the property of a recipient on account of medical expenses paid under the state plan.[3] More specifically, plaintiff argues, MCL 400.106(5) "allows for a full recovery of Medicaid's medical expenditures from the entire settlement regardless of whether the settlement was for medical expenses or other elements of damages such as wage loss or pain and suffering." But to comply with the federal anti-lien provision, plaintiff argues, the statute must limit recovery on a Medicaid lien to the amount received from a third party that is designated as payment for medical expenses, only.

The Supremacy Clause of the United States Constitution, US Const, art VI, cl 2, gives Congress the authority to preempt state laws that interfere with, or are contrary to, federal law.[4]

Whether a federal statute preempts a state statutory provision presents a question of congressional intent. *Thomas*, 241 Mich App at 174. Preemption of state law may be express or implied, and implied preemption includes the form of conflict preemption. *Id*. at 175. "Under conflict preemption, a federal law preempts state law to the extent that the state law directly

---

[3] According to 42 USC 1396p(a)(1), "[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan[.]"

[4] *Ter Beek v City of Wyoming*, 495 Mich 1, 10; 846 NW2d 531 (2014) (quotation marks and citations omitted).

conflicts with federal law or with the purposes and objectives of Congress." *Packowski v United Food & Commercial Workers Local 951*, 289 Mich App 132, 140; 796 NW2d 94 (2010). And that is the argument made by plaintiff in this case.

In support of her argument, plaintiff relies on the United States Supreme Court's holding in *Ahlborn*, 547 US 268. In that case, the Medicaid recipient filed a tort action against third parties allegedly liable for her injuries. The lawsuit was eventually settled for $550,000, but the parties did not allocate separate amounts for medical expenses or other categories of damages. *Id*. at 269. The state of Arkansas was not a party to the settlement but later asserted a Medicaid lien in the amount of $215,645.30, the full amount it had paid for the plaintiff's medical expenses. *Id*. The plaintiff then brought a declaratory judgment action, arguing that the state of Arkansas could "only recover that portion of her settlement representing payment for past medical expenses." *Ahlborn v Arkansas Dep't of Human Servs*, 397 F 3d 620, 622 (CA 8, 2005). The sole issue was: "whether federal Medicaid statutes, which provide for the assignment of rights to third-party payments, but prohibit placing a lien on a Medicaid recipient's property, limit the State's recovery to only those portions of the payments made for medical expenses." *Id*. The parties in *Ahlborn*, including the state of Arkansas, stipulated that the settlement amounted to about one-sixth of the reasonable value of the plaintiff's claim; thus, if the plaintiff prevailed, the state of Arkansas would only recover $35,581.47, rather than $215,645.30. *Id*.

The *Ahlborn* Supreme Court held that the state of Arkansas was only entitled to recover that portion of the settlement proceeds designated as payment for medical expenses, $35,581.47. *Ahlborn*, 547 US at 280-282. The remainder of the plaintiff's settlement proceeds for other categories of damages constituted "property" under 42 USC 1396p(a)(1) and were not subject to the Medicaid lien. *Id*. at 283-285.

Like the Michigan statute which provides that the state "shall recover the full cost of expenses paid," the Arkansas statute provided that the state would recover "to the full extent of any amount which may be paid by Medicaid." *Id*. at 277. The United States Supreme Court noted that the Arkansas statute "claims an entitlement to more than just that portion of a judgment or settlement that represents payment for medical expenses. It claims a right to recover the entirety of the costs it paid on the Medicaid recipient's behalf." *Id*. at 278. In rejecting the state of Arkansas's argument that its statutory scheme was authorized by federal law, the Supreme Court held that, at the very least, the federal third-party statutory provisions[5] only require that a Medicaid recipient assign "the right to recover that portion of a settlement that represents payments for medical care." *Id*. at 282.

---

[5] For example, the *Ahlborn* Supreme Court noted that: (a) 42 USC 1396k(a)(1)(A) provides that, as a condition of eligibility, Medicaid recipients must only assign to the participating state any rights "*to payment for medical care* from any third party;" (b) § 1396a(a)(25)(A) refers only to the legal liability of third parties "*to pay for care and services*" available under the Medicaid program; and (c) § 1396a(a)(25)(H) provides that the participating state must be assigned "the rights of [the recipient] to payment by any other party *for such health care items or services*." *Ahlborn*, 547 US at 280-281.

Further, the *Ahlborn* Supreme Court held, the federal law expressly limits a state's powers to pursue recovery of benefits it paid on the recipient's behalf. *Id*. at 283. Specifically, the anti-lien provision, 42 USC 1396p(a)(1), prohibits the imposition of a lien "against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan[.]" *Id*. While the required assignment of the right, or chose in action, to receive payment in reimbursement for medical care is an exception to the anti-lien provision, the anti-lien provision prohibits the placement of a lien on any other portion of the Medicaid recipient's property—and settlement proceeds are the recipient's "property." *Id*. at 284-286. That is, a lien can encumber the portion of settlement proceeds designated as payment for medical care, but the lien may not encumber any portion of the settlement designated as payment for other losses. *Id*. at 284-285.

In reaching its conclusion, the *Ahlborn* Supreme Court rejected the state of Arkansas's argument that "a rule of full reimbursement is needed generally to avoid the risk of settlement manipulation[.]" *Id*. at 288. The Court noted that, while in that case there was a stipulated amount designated as payment for medical expenses, if there had not been: "the risk that parties to a tort suit will allocate away the State's interest can be avoided either by obtaining the State's advance agreement to an allocation, or, if necessary, by submitting the matter to a court for decision." *Id*. In summary, then, the *Ahlborn* Supreme Court held that the Arkansas statutory lien provision was not authorized by federal Medicaid law and actually conflicted with the anti-lien provision which limits a participating state's recovery to tort proceeds designated as payment or reimbursement for medical expenses incurred by the recipient.

As in *Ahlborn*, plaintiff argues that MCL 400.106(5) conflicts with, and is preempted by, the federal anti-lien provision, 42 USC 1396p(a)(1), to the extent that it operates to permit the recovery of Medicaid expenditures from tort proceeds that were not designated as payment for medical expenses. We agree.

As set forth above, MCL 400.106(5) provides that the state "shall recover the full cost of expenses paid" unless the state "agrees to accept an amount less than the full amount." The rules of statutory construction are well-established and include that the plain and ordinary meaning of unambiguous statutory language governs without further judicial construction. *Velez v Tuma*, 492 Mich 1, 16-17; 821 NW2d 432 (2012). And like the statute at issue in *Ahlborn*—which provided that the state would recover "to the full extent of any amount which may be paid by Medicaid," MCL 400.106(5) does not limit the state's recovery to that portion of the tort judgment or settlement designated as payment for medical expenses. See *Ahlborn*, 547 US at 277. Instead, as the trial court in this case held, MCL 400.106(5) permits the recovery of the full amount of the state's Medicaid lien from the total amount of a judgment or settlement regardless of the allocation of damages.

More specifically, in its opinion, the trial court noted that Meridian Health Plan had a first priority right against the proceeds of the settlement and held that "the lien on the settlement exists with or without the parties' intent to allocate particular percentages for the types of recovery. In other words, medical expenses paid are a sum certain and the lien exists as to the amount paid." The trial court acknowledged plaintiff's contention that " 'because 5% was the contemplated amount of medical expenses in the settlement agreement, anything more is a lien on the 'remainder of the settlement.' " But the trial court disagreed, stating:

> In the Court's view, Plaintiff, as a Medicaid recipient, had a prior obligation under Michigan law to assign the right to receive payments for medical care. [42 USC 1396a(a)(25)(H)]. In other words, the lien exists prior to and independent of the medical malpractice action and subsequent settlement.
>
> * * *
>
> Thus, the state may not encumber any part of the settlement other than the amount of medical expenses. In this case, the amount is a known amount and the amount paid for medical expenses by Meridian represents the true amount of a preexisting lien upon the recovery.

One of the clear problems with the trial court's rationale is that the court did not consider or allocate the settlement proceeds between the different classes or categories of damages recovered by plaintiff. In other words, of the total confidential settlement amount, what percentage of the amount is allocated for non-economic damages, economic damages, and medical expenses? The trial court could not determine how much of the Medicaid lien Meridian Health Plan was entitled to recover without first determining how much plaintiff received in the settlement for medical expenses.

Instead, as permitted by the plain language of MCL 400.106(5), the trial court held that Meridian Health Plan could recover the full amount of its lien from the total amount of settlement regardless of the allocation of damages. In reaching that conclusion, the trial court noted that the lien existed prior to and independent of the lawsuit and was a known amount. But, while the lien existed prior to the lawsuit, only the proceeds that were recovered for plaintiff's medical expenses were subject to that lien. That is so because a Medicaid recipient must only assign to the state any right to payment from a third party for the recipient's medical care, not any right to payment received from a third party for other losses. MCL 400.106(1)(b)(*ii*); see also 42 USC 1396k(a)(1)(A). And the trial court's interpretation of 42 USC 1396a(a)(25)(H) as entitling Meridian Health Plan to recover its full lien amount was expressly rejected by the United States Supreme Court in *Ahlborn*. Quoting the federal statute, the *Ahlborn* Court held that it was clear that states must only be assigned the rights of the Medicaid recipient to payment by any third party for medical expenses and does not sanction an assignment of rights to payment for any other losses. *Ahlborn*, 547 US at 281.

Accordingly, to the extent that MCL 400.106(5) operates to permit the recovery of the full amount of a Medicaid lien from a tort judgment or settlement regardless of the allocation of damages, it is in direct conflict with, and is preempted by, the federal anti-lien provision, 42 USC 1396p(a)(1). As the United States Supreme Court made clear in *Ahlborn*, states may not enact statutory provisions designed to recover medical expenditures from the tort proceeds received by Medicaid recipients that are not designated as payment or reimbursement for medical expenses incurred by the recipient. See *Ahlborn*, 547 US at 277. Because MCL 400.106(5) is preempted by federal law, it is "without effect." *Ter Beek*, 495 Mich at 10, quoting *Maryland v Louisiana*, 451 US 725, 746; 101 S Ct 2114; 68 L Ed 2d 576 (1981). And the trial court's decision granting Meridian Health Plan's request for the full amount of its lien regardless of the allocation of damages is reversed.

Next, plaintiff claims that Meridian Health Plan should only recover 5% of its lien, or $26,775, because her tort action was settled by stipulation for about 19% of her total damages and the parties allocated the settlement funds as 55% for non-economic damages, 40% for economic damages, and 5% for medical expenses. But, as argued by Meridian Health Plan and the Department of Health and Human Services as amicus curiae, Meridian Health Plan was not a party to any such stipulation, was not involved in the settlement negotiations, and did not consent to a reduced lien amount. And there was no judicial oversight of the parties' settlement. Further, the trial court did not hold any hearing on the matter after the case was reinstated; rather, the court assumed without deciding that Meridian Health Plan was entitled to 100% of the lien amount.

Meridian Health Plan argues that, as the *Ahlborn* case foretold about the risk of settlement manipulation, *Ahlborn*, 547 US at 288, in this case the parties "collaborated and attempted to allocate away all but a small fraction of Meridian's statutory lien." Accordingly, Meridian Health Plan intervened in the matter and the trial court subsequently determined that it was entitled to recover its full lien amount of $110,238.19. Meridian Health Plan relies on the United States Supreme Court's holding in *Wos v EMA*, ___ US ___; 133 S Ct 1391, 1399; 185 L Ed 2d 471 (2013), in support of its argument that the trial court did not err in awarding the full lien amount and, thus, plaintiff's appeal lacks merit.

In *Wos*, the United States Supreme Court acknowledged its holding in *Ahlborn* that the federal anti-lien provision, 42 USC 1396p(a)(1), preempts a state statute that attempts to recover any portion of a Medicaid recipient's tort judgment or settlement that was not designated as payment for medical expenses. *Wos*, 133 S Ct at 1394-1397. But in *Wos*, a North Carolina statute provided for an irrebuttable presumption that one-third of a tort recovery was attributable to medical expenses. *Id*. at 1396. Thus, when the parties in that case settled an underlying tort action for $2.8 million for injuries allegedly suffered by the Medicaid recipient, the trial court placed one-third of it into an escrow account until the state's Medicaid lien could be conclusively determined. *Id*. at 1395. North Carolina's Medicaid program had paid for medical expenses totaling $1.9 million. *Id*. The settlement agreement between the parties did not allocate the settlement amount to different categories of damages, including medical expenses. *Id*.

Thereafter, a declaratory action was filed, challenging North Carolina's statutory scheme as violating the Medicaid anti-lien provision, 42 USC 1396p(a)(1). *Wos*, 133 S Ct at 1395-1396. The United States Supreme Court noted that its holding in *Ahlborn* did not address "how to determine what portion of a settlement represents payment for medical care" because in *Ahlborn* the parties had stipulated that about six percent of the tort recovery represented payment for medical care. *Id*. at 1397. But North Carolina's statutory provision allocating an arbitrary, across-the-board, one-third of all recipients' tort recoveries to medical expenses was preempted to the extent that it operated to claim any part of a Medicaid recipient's tort recovery that was not received in payment for medical care. *Id*. at 1397-1398.

The *Wos* Supreme Court noted that the state of North Carolina could not substantiate its claim that the one-third allocation was reasonable. *Id*. at 1399. But, the *Wos* Court held: "When there has been a judicial finding or approval of an allocation between medical and nonmedical damages—in the form of either a jury verdict, court decree, or stipulation binding on all parties—that is the end of the matter." *Id*. The *Wos* Supreme Court noted that in *Ahlborn* "[a]ll

-8-

parties (including the State of Arkansas) stipulated that approximately 6 percent of the plaintiff's settlement represented payment for medical costs." *Id*. However, when such a stipulation or judgment does not exist, and when the "State and the beneficiary are unable to agree on an allocation," the matter must be submitted to the court for a decision as stated by the *Ahlborn* Supreme Court. *Id*. That is, a judicial proceeding is necessary. The *Wos* Supreme Court acknowledged that where a judgment or stipulation does not exist that allocates the plaintiff's recovery across different claims, "a fair allocation of such a settlement may be difficult to determine. Trial judges and trial lawyers, however, can find objective benchmarks to make projections of the damages the plaintiff likely could have proved had the case gone to trial." *Id*. at 1400. The *Wos* Court rejected the argument that such "mini-trials" to divide settlement proceeds between medical and nonmedical expenses would be wasteful and time-consuming noting, in part, that "[t]he task of dividing a tort settlement is a familiar one." *Id*. at 1401. But, in any case, the *Wos* Supreme Court concluded, state statutory provisions must comply with the terms of the Medicaid anti-lien provision which limits a participating state's recovery to tort proceeds designated as payment for medical expenses. *Id*. at 1399, 1402.

Meridian Health Plan argues that a judicial proceeding was conducted in this case and the trial court did, in fact, properly resolve the issue of its Medicaid lien. We cannot agree. As discussed above, the trial court did not conduct any proceedings or render any findings as to the allocation of the settlement proceeds between the different classes or categories of damages to which plaintiff was entitled to recover. Again, what percentage of the confidential settlement amount should be allocated for non-economic damages, economic damages, and medical expenses? Instead, the trial court ordered reimbursement for 100% of the Medicaid lien against the total settlement amount, which may have effectively awarded Meridian Health Plan a portion of plaintiff's settlement proceeds that were in payment for losses other than medical expenses.

But we also reject plaintiff's contention that Meridian Health Plan is bound by the allocation of damages made by the settling parties. As the Department of Health and Human Services argues in its amicus brief, if we were to accept such allocations by settling parties, "the state's Medicaid recovery would be subject to manipulation by the artificially low allocations to medical care, while the beneficiary keeps artificially high allocations to other damage categories like pain and suffering, lost wages, and loss of future earnings." There are different ways to deal with the payment of Medicaid liens in tort matters, but the most efficient way is for the plaintiff to ascertain the precise amount the Medicaid lienholder expects to recover, and negotiate that amount if necessary, before settling the underlying tort action. That did not occur here.

Therefore, this matter must be remanded to the trial court for a proper hearing and resolution because (a) there is no indication in the record that the trial court reviewed the fairness and appropriateness of the confidential settlement and found it reasonable and proper as to the different categories of plaintiff's claimed damages; (b) Meridian Health Plan, although an affected party, did not participate in the settlement negotiations or consent to a reduced recovery on its lien; and (c) Meridian Health Plan and plaintiff are unable to agree on a resolution of the outstanding Medicaid lien. See *Wos*, 133 S Ct at 1399; *Ahlborn*, 547 US at 288. That is, to obviate the risk that the settling parties allocated away Meridian Health Plan's significant interest in recovering its rightful portion of the settlement proceeds, *id*., an evidentiary hearing must be conducted to determine the amount of the Medicaid lien that may be recovered against plaintiff's settlement proceeds considering the true value of the case and plaintiff's claimed losses.

Meridian Health Plan would only be entitled to recover its entire Medicaid lien of $110,238.19 if that amount comports with a fair and proper allocation of damages as between plaintiff's other losses—which is possible. But, again, Meridian Health Plan may only recover its lien amount from the portion of the tort settlement that represents payment for medical expenses. Thus, until either the parties reach an agreement or the trial court determines the proper and fair allocation of damages between the different categories of plaintiff's claimed losses, the amount Meridian Health Plan is entitled to recover on its lien from plaintiff's tort settlement proceeds remains unresolved. Accordingly, the trial court's order requiring plaintiff to pay the full amount of the Medicaid lien, $110,238.19, is vacated and this matter is remanded for further proceedings to resolve that issue only.[6]

Finally, as plaintiff argues on appeal, the trial court also failed to charge Meridian Health Plan its pro-rata share of costs and attorney fees incurred in pursuing plaintiff's tort action and in obtaining the settlement. See MCL 400.106(5). It appears that Meridian Health Plan had conceded in the trial court that its pro-rata share was about 30%, but the trial court did not reduce its lien amount accordingly. On remand, the trial court is to make that determination and adjustment.

In summary, to the extent the provision in MCL 400.106(5)—that the state "shall recover the full cost of expenses paid," operates to permit the recovery of the full amount of a Medicaid lien from a tort judgment or settlement regardless of the allocation of damages, it is in direct conflict with, and is preempted by, the federal anti-lien provision, 42 USC 1396p(a)(1). The trial court's decision granting Meridian Health Plan's request for 100% of its Medicaid lien is reversed, the order requiring plaintiff to pay Meridian Health Plan $110,238.19 is vacated, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

Reversed, vacated, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Neither plaintiff nor Meridian Health Plan is entitled to tax costs. See MCR 7.219(A).

/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto
/s/ Karen M. Fort Hood

---

[6] We note and reject Meridian Health Plan's confusing "arguments" that this case presents no justiciable controversy and that the issue of preemption is moot or not ripe.