**Jamie BELGARD and Janet Squire, Plaintiffs–Appellants and Cross–Appellees,**

v.

**UNITED AIRLINES, a Delaware corporation, Defendant–Appellee and Cross–Appellant.**

**No. 91CA0646.**

Colorado Court of Appeals, Div. III.

Dec. 17, 1992.

Rehearing Denied Jan. 28, 1993.

Certiorari Denied Aug. 23, 1993.

Lynn L. Palma, Denver, Schaden, Lampert & Lampert, Brian J. Lampert, Bruce A. Lampert, Patricia M. Jarzobski, Denver, for plaintiffs-appellants and cross-appellees.

Rothgerber, Appel, Powers & Johnson, Michael D. Nosler, Samuel M. Ventola, Denver, for defendant-appellee and cross-appellant.

Opinion by Judge CRISWELL.

Plaintiffs, Jamie Belgard and Janet Squire, are employees of the defendant, United Air Lines, Inc. They instituted this action against United and sought to represent a class of individuals who were allegedly similarly situated, claiming that they were denied employment as pilots with United because they had undergone surgery that was designed to alleviate the effects of myopia. They asserted that this denial of employment constituted discrimination based on a perceived physical handicap in violation of § 24–34–402(1)(a), C.R.S. (1988 Repl.Vol. 10A). However, the trial court, concluding that plaintiffs' claims were pre-empted by federal statutes regulating the aviation industry, entered summary judgment dismissing those claims. Plaintiffs appeal from that judgment, and we affirm.

Section 24–34–402(1)(a) declares that an employer's refusal to promote an otherwise

qualified person "because of a handicap," constitutes an unlawful employment practice, unless there is "no reasonable accommodation" that can be made with regard to such handicap. Other statutes create the Colorado Civil Rights Commission, § 24–34–303, C.R.S. (1988 Repl.Vol. 10A), and establish procedures for the filing of charges of discrimination with this commission and for their administrative determination. Sections 24–34–306 and 24–34–307, C.R.S. (1988 Repl.Vol. 10A). In addition, the commission is delegated the authority to adopt rules and regulations to implement the provisions of § 24–34–402(1)(a). Section 24–34–305, C.R.S. (1988 Repl.Vol. 10).

In accordance with this delegation of authority, the commission has promulgated Civil Rights Commission Rule 60.2(E), 3 Code Colo.Reg. 708–1, which prohibits an employer from making pre-employment inquiries respecting the "nature or severity of a physical handicap," although inquiries limited to a job applicant's "ability to perform job-related functions" are permissible.

Plaintiffs' complaint contained two claims for relief. The first, based upon the provisions of § 24–34–402(1)(a) itself, asserted that United had denied each of them promotion to the position of flight officer solely because they had undergone radial keratotomy surgery, designed to alleviate the effects of myopia. They asserted that such surgery did not render them incapable of performing the duties of such position and affirmatively asserted that each of them possessed a proper airman's certificate evidencing their physical qualifications to perform the necessary job functions.

In their second claim, plaintiffs relied upon Rule 60.2(E). They alleged that United made it a practice to inquire of prospective job applicants respecting their prior physical history of diseases and injuries, as well as the prior medical history of their parents and other relatives. The purpose of such information, according to plaintiffs, was to allow United to predict the future health of a prospective employee.

## I.

■ In asserting that plaintiffs' state law claims have been pre-empted, both expressly and impliedly, by the provisions of the Airline Deregulation Act of 1978, 49 U.S.C.App. § 1301, et seq. (1992), United relies both upon the comprehensiveness with which this federal legislation has occupied the field of aviation and upon the specific provisions of 49 U.S.C.App. § 1305 (1992). This latter statute says that:

> [N]o state or political subdivision thereof ... shall enact or enforce any law, rule, regulation, standard or other provision having the force and effect of law *relating* to rates, routes or *services* of any air carrier.... (emphasis supplied)

We agree that this federal legislation prevents the enforcement against airlines of Colorado's handicap discrimination law.

The concept that federal enactments may prohibit the enforcement of state laws is grounded upon the constitutional provision that the laws of the United States, made pursuant to the national constitution, "shall be the supreme law of the land." U.S. Const. art. VI.

■ Hence, any state law that conflicts with federal legislation, either directly or because its enforcement would stand as a barrier to the accomplishment of the full purposes and objectives of Congress, cannot be enforced. *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941); *Brubaker v. Board of County Commissioners*, 652 P.2d 1050 (Colo.1982). *See also Maryland v. Louisiana*, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981).

■ However, even if there is no conflict, as such, between the two pieces of legislation, a state enactment or other state law may be rendered inoperative because of an express statement by Congress of its intent that the federal law shall foreclose state action, *i.e.*, the state law is *expressly* pre-empted. *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). *See Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714

(1985); *Brubaker v. Board of County Commissioners, supra.*

■ Finally, even if there is no express statement by Congress respecting pre-emption, the nature of its statutory enactment may nevertheless give rise to an inference of an intent to pre-empt. This inference may arise in a variety of circumstances, including those in which it is apparent that the federal interest is so predominant that a uniform policy is required. *See generally Hillsborough County v. Automated Medical Laboratories, Inc., supra; Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).

Here, United argues that the federal aviation legislation bars the application of Colorado's handicap discrimination statute, both expressly and by necessary implication. However, because we conclude that Congress has expressed a specific intent to pre-empt the operation of state laws of this nature, we need not determine the extent to which the substantive provisions of the Airline Deregulation Act and its later amendments would otherwise give rise to an implied intent to pre-empt.

As we have noted, 49 U.S.C.App. § 1305 specifically prohibits the enforcement of any state law "relating to" the "services" of an air carrier. And, in similar contexts, the United States Supreme Court has instructed that Congress intended to have a broad meaning assigned to this term.

In *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Supreme Court construed a similar term that Congress had used in another pre-emptive provision contained within the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (1976). There, the statute pre-empted any state law that "relate[d] to any employee benefit plan," as such plan was defined by the federal act. Holding that the relevant term, "related to," must be held to have the meaning ordinarily ascribed to it, the court concluded that any state law that "has a connection with or reference to such a plan" may not be enforced. *Shaw, supra,* 463 U.S. 85 at 97, 103 S.Ct. 2890 at 2891, 77 L.Ed.2d at 501. Hence, the court

held that this federal legislation prohibited New York from enforcing its statute declaring it to be unlawful sex discrimination for an employer to treat pregnancy different from other nonoccupational disabilities for purposes of employee health and disability programs.

More recently, the Supreme Court applied the same analysis to the very statute that is at issue here. In *Morales v. Trans World Airlines, Inc.,* —— U.S. ——, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the court adopted the same definition of the phrase "relating to," as used in the Airlines Deregulation Act, as it had adopted in *Shaw, i.e.,* any law that is connected with or has reference to an airlines' rates, routes, or services is pre-empted. Therefore, a general California statute designed to prohibit deceptive trade practices was held to be unenforceable with respect to an airline's sale of tickets. And, this was true even though there was no inconsistency between the purposes of the federal and state enactments; the pertinent provisions of 49 U.S.C.App. § 1305 contain no suggestion that only inconsistent state laws are to be pre-empted.

Therefore, the specific question presented here is whether the Colorado statute prohibiting handicap discrimination in employment, if applied to an airline, can be said to have a connection with or reference to that airline's "services." We conclude that it does.

The Airlines Deregulation Act emphasizes that two of its primary purposes are the "maintenance of safety as the highest priority in air commerce" and the "placement of maximum reliance on competitive market forces." 49 U.S.C.App. § 1302(a)(1) and (4) (1992). And, the nature of an airline's services necessarily impacts upon both these purposes; these services must emphasize safety as a primary consideration, while assuring that they remain competitive in the market place. Moreover, the quality of the services rendered by an airline employee directly impacts upon the services that that airline renders to its customers.

Hence, few factors are more important in determining the nature of the services that an airline is to provide than the quality of its employees. Particularly in the case of flight personnel, both their present physical capabilities and their expectation of continued good health will have an effect upon the services to be rendered their employer. To this end, the federal legislation itself establishes minimum physical requirements for such personnel. 49 U.S.C.App. §§ 1421 and 1422 (1952).

■ We conclude, therefore, that any law or regulation that restricts an airline's selection of employees, based on their physical characteristics, must necessarily have a connection with and reference to, and therefore must be one "relating to," the services to be rendered by that airline.

The opinions issued by several courts contain rationales supporting our conclusion in this respect.

In *French v. Pan Am Express, Inc.*, 869 F.2d 1 (1st Cir.1989), for example, the court held that a state statute mandating an employer's drug testing procedures for employees cannot be applied to the employees of an airline. The decision was grounded upon the premise that the pertinent federal statute legislated upon a subject of such paramount interest to the federal government that uniformity required pre-emption as a matter of implied Congressional intent. Nevertheless, the court's determination necessarily mandates the conclusion that the attempted regulation of such employment restrictions relates to the services of an airline carrier.

Similarly, in *World Airways, Inc. v. International Brotherhood of Teamsters*, 578 F.2d 800 (9th Cir.1978), it was held that the Federal Aviation Act, as it existed prior to its amendment by the Airlines Deregulation Act, pre-empted an arbitrator's award rendered under the provisions of the Railway Labor Act, 45 U.S.C. § 184 (1970), requiring the reinstatement of a pilot to his former position. At the time of the events giving rise to the *World Airways* case, no express pre-emptive provision had been adopted by Congress, but the Court of Appeals found evidence of an intent to pre-empt from the substantive provisions of the previous federal act.

We are also convinced that our conclusion here is not inconsistent with the Supreme Court's decision in *Colorado Anti–Discrimination Commission v. Continental Air Lines, Inc.*, 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963). In that case, the Supreme Court determined that the prior federal law, which did not contain the express pre-emptive provision at issue here, did not pre-empt the enforcement against an air carrier of a Colorado statute prohibiting racial discrimination in the hiring of employees. Its decision was grounded upon the underlying premise that such a law could not have any adverse impact upon the required national uniformity because an inconsistent requirement, *i.e.*, a requirement to engage in racial discrimination, could not be validly enforced in any state.

Here, however, that is not the case. If the states were free to regulate an airline's hiring practices with respect to applicants having, or being perceived to have, a physical handicap, the area of possible conflict would be nearly limitless. Not only could each state define for itself the very concept of a "handicap," but one state could compel the employment of persons with a particular disability and a second could prohibit such employment, while yet a third could leave the decision within the discretion of the particular airline.

The fact that such an accumulation of conflicting regulations might be possible not only serves to distinguish the issue here from that presented in *Colorado Anti–Discrimination Commission, supra,* but it reinforces our conclusion that Congress' expressed intent was to prohibit such a result.

## II.

In light of our conclusion that the trial court properly dismissed plaintiffs' complaint in its entirety, it is unnecessary for

us to consider United's assertions on its cross-appeal.

Judgment affirmed.

SMITH and ROTHENBERG, JJ., concur.