Irvin M. NOKES, Jr., Plaintiff–Appellant,

v.

ASPEN AVIATION, INC.; Aspen Base Operation, Inc.; Clifford Runge; and Kim Bracher, Defendants–Appellees.

No. 03CA0141.

Colorado Court of Appeals, Div. III.

June 17, 2004.

Certiorari Denied Jan. 10, 2005.*

---

* Justice KOURLIS would grant as to the following issue:

Whether section 41713(b)(1) of the Airline Deregulation Act of 1978 (the "ADA"), 49 U.S.C. section 41713(b)(1)(2004), preempts a pilot's state-law tort and contract claims arising from an airline's termination of his employment where the termination is purportedly based on retaliation for the pilot's (i) alleged warnings concerning visibility of runway lights at the airport; and (ii) refusal to comply with a safety measure adopted by the airline.

Richard L. Dally, Englewood, Colorado, for Plaintiff–Appellant.

Holland & Hart, LLP, Brian M. Mumaugh, Megan C. Bertron, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge CARPARELLI.

In this dispute concerning federal preemption of employment termination claims, plaintiff, Irvin M. Nokes, Jr. (pilot), appeals the trial court's order dismissing his action against defendants, Aspen Aviation, Inc., Aspen Base Operation, Inc., Clifford Runge, and Kim Bracher (collectively, the airline). We vacate the order and remand for further proceedings.

The airline terminated pilot for insubordination when he refused to disconnect his aircraft's batteries, and thereby disable the aircraft, after each landing. In his complaint, pilot alleged that the airline terminated him because he had expressed concerns about runway lighting to officials at Aspen/Pitkin County Airport. He sued the airline for breach of contract, wrongful termination, intentional interference with contract, and outrageous conduct, alleging that he was fired in retaliation for reporting safety violations.

The court first granted summary judgment to the airline with regard to pilot's claim for outrageous conduct. Later, when considering the airline's motion to dismiss the remaining claims, the trial court accepted as true pilot's allegation that the airline fired him because he had written to airport officials about the runway lighting. The court concluded that the Airline Deregulation Act (the Act) and the Whistleblower Protection Program, which Congress later added, preempt pilot's claims. Pilot now appeals.

If the Act preempts pilot's state common law claims, the claims must be dismissed because they fail to state claims upon which relief can be granted. C.R.C.P. 12(b)(5).

### I. Airline Deregulation Act

Pilot contends that his claims of breach of contract, wrongful discharge, and intentional interference with contract do not relate to the airline's prices, routes, or services and therefore are not preempted by the Act. We agree.

#### A. Preemption

"An analysis of federal preemption issues begins with 'the basic assumption that

Congress did not intend to displace state law.'" *Middleton v. Hartman,* 45 P.3d 721, 731 (Colo.2002) (quoting *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)).

· ■  Federal preemption of state law or regulation is "fundamentally a question of congressional intent." *Banner Adver., Inc. v. City of Boulder,* 868 P.2d 1077, 1080 (Colo. 1994).

■  Preemption occurs when federal law explicitly preempts state law. When federal law is not explicit, it may, nonetheless, implicitly preempt state law and regulation if the scheme of federal regulation is so pervasive that it is reasonable to infer that Congress left no room for the states to supplement it. Implicit preemption also occurs when the federal interest in the field touched by the statute is so dominant that courts will assume that the federal system precludes enforcement of state laws on the same subject. *Banner Adver., Inc. v. City of Boulder, supra* (citing *Fidelity Fed. Savs. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); *Jones v. Rath Packing Co.,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).

■  Finally, federal law preempts state law when the two conflict. This occurs when "it is impossible for a private party to simultaneously comply with both state and federal laws." *Banner Adver., Inc. v. City of Boulder, supra,* 868 P.2d at 1080. It also occurs when "the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objects of Congress.'" *Banner Adver., Inc. v. City of Boulder, supra,* 868 P.2d at 1080 (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67–68, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)).

The Act amended the Federal Aviation Act and deregulated the airline industry. *Arapahoe County Pub. Airport Auth. v. Centennial Express Airlines, Inc.,* 956 P.2d 587 (Colo. 1998). It reflects Congress's determination "that market forces [are] better suited for promoting efficiency, innovation, low prices, variety, and quality in the air transportation industry." *Arapahoe County Pub. Airport Auth. v. Centennial Express Airlines, Inc., supra,* 956 P.2d at 593; *see also Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

The Act explicitly preempts state laws, regulations, and provisions "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1).

### B. Related to Price, Route, or Service

■  The phrase "related to," as used in the Act's explicit preemption provision, should be read to mean "States may not seek to impose their own public policies or theories of competition or regulation on the operations of an air carrier." *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 229 n. 5, 115 S.Ct. 817, 824, 130 L.Ed.2d 715 (1995). Thus, claims based on state laws are preempted if the state law explicitly refers to airline prices, routes, and services or has a significant effect on those aspects of the business. However, the Act does not preempt state laws and regulations when the relationship between the state law and the effect on prices, routes, and services is too tenuous. *Morales v. Trans World Airlines, Inc., supra; Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Arapahoe County Pub. Airport Auth. v. Centennial Express Airlines, Inc., supra; Fadaie v. Alaska Airlines, Inc.,* 293 F.Supp.2d 1210 (W.D.Wash.2003).

In *Arapahoe County Public Airport Authority v. Centennial Express Airlines, Inc., supra,* the Colorado Supreme Court held that the airport authority's regulatory prohibition of scheduled passenger service was not contrary to "the plain meaning of the [Act's] preemption provision because it does not regulate the manner in which airport users conduct their business." The court concluded that prohibiting scheduled passenger service does not relate to airline services "because it does not concern typical service-oriented tasks such as ticketing, boarding procedures, providing meals and drinks to passengers, and baggage handling." *Arapahoe County Pub. Airport Auth. v. Centennial Express Airlines, Inc., supra,* 956 P.2d at 595 (citing

*Hodges v. Delta Airlines, Inc.*, 44 F.3d 334 (5th Cir.1995)).

Here, the airline relies, in part, on *Botz v. Omni Air International*, 286 F.3d 488 (8th Cir.2002). There, a flight attendant sued under the Minnesota whistleblower statute, alleging she was wrongfully discharged for refusing a flight assignment she believed would violate a federal aviation regulation (FAR). The court concluded that because the flight attendant could force the airline to cancel a flight by refusing a flight assignment, she could have a direct effect on the air carrier's services. Therefore, the court held that the flight attendant's conduct had a forbidden relationship to the airline's service and that "the ordinary meaning of the language of the [Act's] [preemption] provision adequately demonstrates Congress's intent to [preempt] [the flight attendant's] claims under the Minnesota whistleblower statute." *Botz v. Omni Air Int'l, supra,* 286 F.3d at 493.

In *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1264 (11th Cir.2003), the decision also turned on whether the employee's conduct might affect a scheduled flight. There, an airline mechanic alleged he was discharged for having reported past violations of various FARs. The court held that "retaliation claims brought under state whistleblower statutes must be evaluated on a case-by-case basis to determine the connection between the action in question and airline services." *Branche v. Airtran Airways, Inc., supra,* 342 F.3d at 1263 n. 9.

The *Branche* court emphasized that the mechanic's postflight report did not involve the withdrawal of clearance for a plane to take off. The court concluded that the connection or potential connection between the mechanic's actions and air carrier services was "far more attenuated" than in Botz. *Branche v. Airtran Airways, Inc., supra,* 342 F.3d at 1262. The court noted that the two cases would be more alike if the mechanic had alleged that his employer fired him for refusing to allow a plane to take off due to safety concerns. The court concluded that the connection between the mechanic's actions and the airline's services was "extreme-ly loose at best." *Branche v. Airtran Airways, Inc., supra,* 342 F.3d at 1263 n. 9.

Here, the airline contends that, in *Belgard v. United Airlines*, 857 P.2d 467 (Colo.App. 1992), a division of this court determined that "safety issues were sufficiently related to airline services to mandate preemption in that case." We disagree with this interpretation of the case.

In *Belgard,* the plaintiffs asserted that the airline's refusal to hire pilots who had surgery to correct myopia constituted handicap discrimination in violation of Colo. Sess. Laws 1986, ch. 179, § 24–34–402(1)(a) at 931. The division noted that airline employees' health and physical capabilities affect the services those employees render to the airline and that the quality of the employees' services "directly impacts upon the services that that airline renders to its customers." *Belgard v. United Airlines, supra,* 857 P.2d at 470. Consequently, the division's essential holding was that "any law or regulation that restricts an airline's selection of employees, based on their physical characteristics, must necessarily have a connection with and reference to, and therefore must be one 'relating to,' the services to be rendered by that airline." *Belgard v. United Airlines, supra,* 857 P.2d at 471.

Although the *Belgard* division commented that an airline's services necessarily affect safety and competition and that airlines must emphasize safety as a primary consideration while also assuring they remain competitive in the marketplace, it did not rule that all safety issues affect services.

In contrast, although enforcement of a state's antidiscrimination statutes or negligence claims could influence a carrier's decision to operate in a particular market or to alter operations in an attempt to avoid liability, such a tenuous causal relationship between the state law and the effect on prices, routes, and services does not trigger preemption. *See Duncan v. Northwest Airlines, Inc.,* 208 F.3d 1112 (9th Cir.2000); *Newman v. Am. Airlines, Inc.,* 176 F.3d 1128 (9th Cir.1999); *Aloha Islandair, Inc. v. Tseu,* 128 F.3d 1301 (9th Cir.1997); *Fadaie v. Alaska Airlines, Inc., supra* (court held that under the *Duncan* analysis, discrimination, negli-

gence, and outrageous conduct claims had only an indirect effect on an airline's business decisions; the underlying state laws were not related to pricing, routes, or service, and therefore, were not preempted).

## C. Pilot's Claims

■ Like the court in *Branche,* we conclude that the specific allegations of pilot's claims are determinative of the issue and that we must assess the connection between pilot's conduct and airline services.

Here, pilot alleges that in late 2000, he expressed concerns to airport officials regarding runway lighting. In his affidavit he states that, in February 2001, he responded to memoranda the airport issued regarding lighting and noted that the lights were not visible at certain glide angles. In late March 2001, there was a fatal plane crash at the airport and the Federal Aviation Administration talked with pilot and others about the runway lights. Pilot also alleges that in September 2001, other pilots began asking him about the runway lights and he learned that the airline had received notices of claims and lawsuits related to the crash.

In October 2001, after the World Trade Center attack on September 11, 2001, the airline ordered all pilots to disable unattended aircraft when away from Aspen by disconnecting the aircraft's batteries. Pilot refused to disable his aircraft, contending that pilots are not authorized to do so under federal law and regulations.

Pilot's refusal to disable his aircraft does not concern performance of typical service-oriented tasks, such as ticketing, boarding procedures, provision of food to passengers, baggage handling, and transportation itself. Thus, pilot's prosecution of his claims of breach of contract, wrongful discharge, and intentional interference with contract will not have a direct effect on the airline's performance of those tasks. *See Fadaie v. Alaska Airlines, Inc., supra; Arapahoe County Pub. Airport Auth. v. Centennial Express Airlines, Inc., supra.*

Unlike in *Botz,* here there is no indication that pilot's conduct affected or jeopardized the airline's ability to render services to its passengers by threatening to ground flights. Similarly, there is no indication that pilot's actions had any effect on the aircraft's ability to fly as scheduled. For these same reasons, we are not persuaded by the unpublished federal district court case cited by the airline. Instead, pilot's actions are more like the mechanic's postflight reports in *Branche.*

In addition, the airline did not terminate pilot because of his health, physical characteristics, or ability to serve as a pilot. Therefore, the holding in *Belgard* does not support a conclusion that pilot's conduct and claims have, a forbidden relationship to the airline's services. And although pilot's state common law claims include circumstances related to safety, the nexus between his claims and the airline's services is, without more, insufficient to conclude that the Act preempts his claims. *See Branche v. Airtran Airways, Inc., supra.*

Therefore, we conclude that the connection between pilot's conduct and the airline's services is, at best, extremely tenuous and that the Act does not preempt his claims.

## II. Whistleblower Protection Program

■ In support of the dismissal order, the airline contends that the Whistleblower Protection Program (WPP) preempts pilot's claims. We disagree.

■ The enactment of a federal remedy, without more, does not "expand the scope of an express [preemption] provision to encompass and [preempt] all equivalent state remedies." *Branche v. Airtran Airways, Inc., supra,* 342 F.3d at 1264. *See generally Medtronic, Inc. v. Lohr,* 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996).

The WPP, enacted as an amendment to the Act, provides a remedial scheme for an airline employee who has been discharged or otherwise discriminated against for providing the "employer or the Federal Government [with] information relating to any violation or alleged violation of any order, regulation or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety . . . or any other law of the United States." 49 U.S.C. § 42121(a)(1).

The WPP contains "no reference to pre-emption and no indication that the WPP changed the scope of [the Act]: '[i]t simply added an additional remedy for plaintiffs seeking to advance a retaliatory discharge claim.'" *Fadaie v. Alaska Airlines, Inc.*, *supra*, 293 F.Supp.2d at 1217 (quoting *Branche v. Airtran Airways, Inc., supra*, 342 F.3d at 1264).

Filing a complaint under the WPP is not mandatory. The WPP provides that a "person who believes that he or she has been discharged or otherwise discriminated against by any person in violation of subsection (a) may . . . file . . . a complaint with the Secretary of Labor alleging such discharge or discrimination." 49 U.S.C. § 42121(b)(1).

Here, we perceive no basis to conclude that the WPP preempts available state remedies that are not preempted by the Act itself. Instead, we conclude that the WPP merely provides an alternative remedial framework that might have been available to this plaintiff.

The order dated November 27, 2002, is vacated, and the case is remanded for reinstatement of the affected claims and further proceedings in accordance with this opinion.

Judge KAPELKE and Judge ROY concur.