**Emilio PAREDES, Plaintiff–Appellant,**

v.

**AIR–SERV CORPORATION, INC. and United Air Lines, Inc., Defendants–Appellees.**

**No. 09CA1729.**

Colorado Court of Appeals, Div. VII.

Dec. 9, 2010.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2010.

Harding & Associates, P.C., Phil Harding, Nevin A. Seeger, Mike Lazar, Denver, Colorado, for Plaintiff-Appellant.

Harris, Karstaedt, Jamison & Powers, P.C., Mark Sares, Englewood, Colorado, for Defendants–Appellees.

Opinion by Judge RICHMAN.

Plaintiff, Emilio Paredes, appeals the district court's judgment dismissing his complaint alleging negligence against defendants, Air Serv Corporation, Inc. and United Airlines, Inc. Because we conclude his state law negligence claim is not preempted by the Federal Aviation Authority Authorization Act, 49 U.S.C. § 41713(b)(1) (1994), we reverse and remand with directions to reinstate the complaint.

## I. Background

Plaintiff's complaint alleged, in a single negligence claim, that while he was traveling by air on United-operated flights from Florida to his home in Alaska, he was in a weakened condition and required wheelchair assistance. During a layover at Denver International Airport, defendants' agents met plaintiff on the aircraft and placed him in an aisle wheelchair to transfer him to his next flight. He alleged that as defendants' employees took him off of the plane they wheeled him very quickly through the aircraft toward the jet way. Upon reaching the junction of the jet way and the aircraft, the wheelchair caught the edge of the jet way, causing plaintiff, who was still strapped into the wheelchair, to fall violently onto the ground and suffer immediate and excruciating pain and injury.

The complaint further alleged that after the incident on the jet way, defendants' agents left plaintiff alone in the airport terminal for more than thirty minutes in a filthy wheelchair. As plaintiff tried to raise himself out of the wheelchair, it gave way beneath him, resulting in a sudden and awkward application of force on his knees. He alleged his knees were severely injured and he experienced further, excruciating pain. Plaintiff alleged that he suffered economic and noneconomic injuries from defendants' negligent conduct.

Air Serv moved to dismiss pursuant to C.R.C.P. 12(b)(5), arguing that plaintiff's common law negligence claim for personal injuries was preempted by the Federal Aviation Authority Authorization Act (FAAAA), 49 U.S.C. § 41713(b)(1) (1994) (formerly the Airline Deregulation Act (ADA), 49 U.S.C.App. § 1305(a)(1) (repealed 1994)) (the preemption provision). The preemption provision provides that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." [1] When the trial court indicated it would grant Air Serv's motion to dismiss, United joined in the motion.

The trial court dismissed plaintiff's complaint with respect to both defendants, concluding that the Colorado Supreme Court's discussion of the preemption provision in *Arapahoe County Public Airport Authority v. Centennial Express Airlines, Inc.*, 956 P.2d 587 (Colo.1998), mandated that result.

In *Centennial*, the supreme court held that the ADA preemption provision did not preempt the Airport Authority's ban on scheduled passenger services. *Id.* at 593. The *Centennial* court relied upon the Supreme Court's discussion of the preemption provision in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), and the Court's conclusion that it "preempted all state laws relating to the rates, routes, or services of an interstate air carrier." *Centennial*, 956 P.2d at 593 (citing *Morales*, 504 U.S. at 378, 112 S.Ct. 2031). The *Centennial* court described airline "services," as used in the provision, to include "typical service-oriented tasks such as ticketing, boarding procedures, providing

---

1. The former ADA provision, 49 U.S.C.App. § 1305(a)(1), provided that "no state ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services

of any air carrier." The courts have recognized that the change in the language did not change the substance of the provision. *See Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 191 n. 3 (3d Cir.1998).

meals and drinks to passengers, and baggage handling." *Centennial,* 956 P.2d at 594–95.

In deciding defendants' motions to dismiss, the trial court reasoned that because the court in *Centennial* had mentioned "boarding procedures" in its reference to preempted "services"; defendants' *de*-boarding procedures in this case would also "fall within the broad meaning of 'relating to' services as described in *Morales,* and thus plaintiff's claim was preempted." This appeal followed.

## II. Standard of Review

We review de novo a trial court's decision to grant a motion to dismiss. *Wagner v. Grange Ins. Ass'n,* 166 P.3d 304, 307 (Colo.App.2007). "[I]n evaluating a C.R.C.P. 12(b)(5) motion, we may consider only those matters stated in the complaint and must accept all allegations of material fact as true, viewing the allegations in the light most favorable to the plaintiff." *Lambert v. Ritter Inaugural Committee, Inc.,* 218 P.3d 1115, 1119 (Colo.App.2009). Motions to dismiss should only be granted when "the plaintiff's factual allegations cannot support a claim as a matter of law." *BRW, Inc. v. Dufficy & Sons, Inc.,* 99 P.3d 66, 71 (Colo.2004).

## III. Preemption Under 49 U.S.C. § 41713(b)(1)

The single issue before us is whether the trial court erred in concluding that the FAAAA preemption provision, 49 U.S.C. § 41713(b)(1), preempts plaintiff's common law negligence claim.

Congress has the power to preempt state law. U.S. Const. art. VI, cl. 2; *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). A cardinal rule of preemption analysis is the "starting presumption that Congress d[id] not intend to supplant state law." *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). This "presumption against preemption" takes on added significance "where federal law is said to bar state action in fields of traditional state regulation." *Id.* at 655, 115 S.Ct. 1671. Accordingly, "the historic police powers of

the States [a]re not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).

Congress enacted the ADA in 1978 to foster "an air transportation system which relies on competitive market forces to determine the quality, variety and price of air services." Pub.L. No. 95–504, 92 Stat. 1705 (1978). Congress expressly preempted any state regulation "relating to rates, routes, or services of any air carrier," *cf.* 49 U.S.C. § 41713(b)(4)(A) ("related to a price, route, or service of an air carrier"), "[t]o ensure that States would not undo federal deregulation with regulation of their own." *Morales,* 504 U.S. at 378, 112 S.Ct. 2031.

Congress, however, left in place the "savings clause" contained in the ADA's predecessor legislation, the Civil Aeronautics Act, § 1106, 52 Stat. 1027 (1938). The FAAAA savings clause provides that "[a] remedy under this part is in addition to any other remedies provided by law." 49 U.S.C. § 40120(c) (1998).

Although the Supreme Court has interpreted the reach of the ADA's preemption provision in three cases, it has not expressly ruled on whether state tort actions are within the provision's preemptive scope. Thus, the provision "has been a source of considerable dispute since its enactment." *Charas v. Trans World Airlines, Inc.,* 160 F.3d 1259, 1263 (9th Cir.1998), *amended,* 169 F.3d 594 (9th Cir.1999).

### A. Supreme Court Precedent

#### 1. *Morales*

The Court first construed the preemption provision in *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), a case in which several states sought to enforce airline fare advertising guidelines adopted by the National Association of Attorneys General (NAAG) through their existing general consumer protection laws. *Id.* at 380–81, 112 S.Ct. 2031. Recognizing that the ADA's preemption provision and the preemption clause in the Employee Retirement Security Act of 1974

(ERISA) contained the "identical" preemptive phrase "relate to," the Court drew upon its ERISA decisions to hold that "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services'" were preempted by the ADA. *Id.* at 384, 112 S.Ct. 2031 (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)).

Applying this expansive interpretation of the phrase "relate to," the Court then found that because the "obligations imposed by the [NAAG] guidelines would have a significant impact upon the airlines' ability to market their product, and hence a significant impact upon the fares they charge," they had a "forbidden significant effect" on airline "rates, routes, or services" and were therefore preempted. *Id.* at 388, 390, 112 S.Ct. 2031.

However, the Court acknowledged that "'[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre[ ]emptive effect." *Id.* at 390, 112 S.Ct. 2031 (citing *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. 2890).

## 2. *Wolens*

The Court recognized more specific limits on the ADA's preemptive reach when it revisited the preemption provision in *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). *Wolens* involved state law claims arising from an airline's retroactive changes to its frequent flyer program. 513 U.S. at 224–25, 115 S.Ct. 817. Participants in the program sued the airline, alleging violations of a state consumer fraud statute and breach of contract. *Id.* The Court again looked to the plain language of the preemption provision, this time focusing on the words "enact" and "enforce." *Id.* at 227, 115 S.Ct. 817. It held that the consumer fraud claims were preempted because, similar to the NAAG guidelines at issue in *Morales*, the state statute "serve[d] as a means to guide and police the marketing practices of the airlines," thereby imposing state substantive standards with respect to "rates, routes, or services." *Id.* at 228, 115 S.Ct. 817.

However, the Court ruled that the plaintiffs' common law contract claims were not preempted because they merely involved the enforcement of the airline's "own, self-imposed undertakings," and "d[*id.*] not amount to a State's 'enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law' within the meaning of [ADA § ] 1305(a)(1)." *Id.* at 228–29, 115 S.Ct. 817.

Although it did not characterize the consumer fraud claims as claims for personal injuries, the Court observed that the airline had not argued that personal injury claims related to airplane operations were preempted. *See id.* at 231 n. 7, 115 S.Ct. 817. The Court also quoted the statement in the government's amicus curiae brief: "'It is ... unlikely that [s]ection 1305(a)(1) preempts safety-related personal-injury claims relating to airline operations.'" *Id.*

While the *Wolens* majority did not directly address whether common law tort claims were preempted, in separate opinions both Justices Stevens and O'Connor did. Concurring with the holding that the ADA did not preempt contract claims, Justice Stevens concluded that "private tort actions based on common-law negligence or fraud, or on a statutory prohibition against fraud, are not pre-empted" and postulated that "Congress did not intend to give airlines free rein to commit negligent acts subject only to the supervision of the Department of Transportation, any more than it meant to allow airlines to breach contracts with impunity." *Id.* at 235, 237, 115 S.Ct. 817 (Stevens, J., concurring in part and dissenting in part). Justice Stevens reasoned that the standard of ordinary care, like contract principles, "is a general background rule against which all individuals order their affairs." *Id.* at 236–37, 115 S.Ct. 817.

While Justice O'Connor dissented from the denial of preemption for the contract claims, urging broader preemption than the majority, she expressly stated: "my view of *Morales* does not mean that personal injury claims against airlines are always preempted." *Id.* at 242, 115 S.Ct. 817 (O'Connor, J., concurring in the judgment in part and dissenting in part). She cited with approval a

number of cases in the federal courts of appeals and district courts that allowed recovery in tort cases in the face of preemption arguments. *See id.* at 242–43, 115 S.Ct. 817. Taking note of Justice O'Connor's separate opinion, the majority acknowledged that even Justice O'Connor's "all is preempted position" leaves room for concluding that personal injury claims are not preempted if they are classified as matters not relating to air carrier services. *Id.* at 235 n. 9, 115 S.Ct. 817.[2]

### 3. *Rowe*

In *Rowe v. New Hampshire Motor Transport Ass'n,* 552 U.S. 364, 128 S.Ct. 989, 169 L.Ed.2d 933 (2008), the Court determined that the ADA's preemption provision, which had been adopted as part of the Motor Carrier Act, 49 U.S.C. § 14501(c)(1) (1994), preempted two provisions of a Maine tobacco law, which regulated the delivery of tobacco to customers within the state. The *Rowe* Court referred to its *Morales* analysis and emphasized that "federal law does not preempt state laws that affect rates, routes, or services in 'too tenuous, remote, or peripheral a manner.'" *Rowe,* 552 U.S. at 375, 128 S.Ct. 989 (quoting *Morales,* 504 U.S. at 390, 112 S.Ct. 2031). In addition, "state laws whose 'effect' is 'forbidden' under federal law are those with a 'significant impact' on carrier rates, routes, or services." *Rowe,* 552 U.S. at 375, 128 S.Ct. 989 (citing *Morales,* 504 U.S. at 388, 390, 112 S.Ct. 2031). Thus, the Court indicated that a general state law, affecting the airline industry "as members of the general public," having an insignificant impact on the industry, and a "tenuous, remote, or peripheral connection" to the industry, would likely not be preempted. *See Rowe,* 552 U.S. at 375–76, 128 S.Ct. 989.

### B. Federal Circuit Court Cases

Notwithstanding the Supreme Court's efforts to clarify the issue, federal circuit courts are divided over the application of the

preemption provision with respect to state tort claims.

### 1. Claims Not Preempted

Although a majority of the circuit courts have concluded that the preemption provision does not preempt state court claims, they reach their conclusions for different reasons.

In *Charas,* 160 F.3d at 1261, the Ninth Circuit overruled five separate consolidated cases that had dismissed passenger claims against airlines, holding that Congress did not intend to preempt "run-of-the-mill personal injury claims."

In *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 339–40 (5th Cir.1995), a passenger in a plane was injured when a box containing several bottles of rum fell from an overhead bin. The Fifth Circuit held that his claim was attributable to the "operation" of the aircraft rather than to "services" and hence was not preempted.

The court reached the same result via a different rationale in a companion case, *Smith v. America West Airlines, Inc.,* 44 F.3d 344 (5th Cir.1995), where the airline permitted a visibly deranged hijacker to board a flight. There, it concluded that "boarding practices" constituted "services" only in their economic or contractual dimension, but "not insofar as the safety of the flight is involved." *Id.* at 347.

In *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1433 (7th Cir.1996), the court allowed the plaintiff's defamation claims to proceed. It found the defendant's false statements about the plaintiff's activities did not expressly refer to "airline rates, routes, or services," and did not have the "'forbidden significant [economic] effect' on airline rates, routes, or services, as contemplated by *Morales." Id.*

### 2. Claims Preempted

Defendants have cited to one circuit court case that held common law tort claims are preempted by the ADA preemption provi-

---

**2.** Following *Wolens,* one federal circuit court commented: "In short, the Supreme Court, although it has not yet directly addressed the preemption clause as applied to state tort claims,

has strongly indicated that they would not be barred." *Taj Mahal Travel, Inc.,* 164 F.3d at 192.

sion. In *Smith v. Comair, Inc.*, 134 F.3d 254, 259 (4th Cir.1998), the plaintiff alleged intentional tort claims against the airline for refusing to permit him to board his flight. The court stated that, "[u]ndoubtedly, boarding procedures are a service rendered by an airline," and concluded that to the extent the plaintiff's claims were based upon the airline's boarding practices, "they clearly relate to an airline service and are preempted under the ADA." *Id.*

### C. District Court Cases

The federal district courts have likewise reached their conclusions as to whether or not the preemption provision preempts state torts claims for different reasons, as surveyed here.

### 1. Claims Not Preempted

Several district courts have concluded that the preemption provision does not apply to claims arising from facts analogous to those alleged in this case.

In *Seals v. Delta Air Lines, Inc.*, 924 F.Supp. 854 (E.D.Tenn.1996), an airline customer alleged that she was injured as a result of the airline's negligent failure to provide a wheelchair to transport her between gates. *Id.* at 856. The court held that the preemption provision does not apply to such a claim. *Id.* at 859. Referring to *Wolens*, the court concluded that "the Supreme Court does not interpret the [FAAAA] preemption clause to extend to personal injury suits against air carriers." *Id.* The court also was persuaded that Congress could not have intended to leave passengers injured through airline negligence without a remedy. *Id.*

Similarly, in *Rowley v. American Airlines*, 875 F.Supp. 708, 710 (D.Or.1995), the plaintiff, who required a wheelchair for mobility, brought a suit for emotional distress damages because the airline failed to provide her with appropriate services. The court held that the preemption provision did not preempt her claims because an award of damages would not contravene the goals of deregulation and would not have a significant impact on the ability of an airline to administer services. *Id.* at 712–13.

In *Moore v. Northwest Airlines, Inc.*, 897 F.Supp. 313, 314 (E.D.Tex.1995), the passenger, who was overturned backwards in his wheelchair in the jet-bridge while deplaning, alleged negligence and gross negligence claims against the airline for failing to provide services and personnel that would have assured his safety. The court concluded that federal law did not preempt the claims based on the airline's failure to provide appropriate deplaning services to the plaintiff because FAAAA preemption was limited to laws that regulate the economic aspects of the airline business. *Id.* at 315.

In *Jamerson v. Atlantic Southeast Airlines*, 860 F.Supp. 821, 826 (M.D.Ala.1994), the court found that the passenger's claim based on the airline's failure to assist the passenger in deplaning was beyond the scope of intended Congressional preemption.

In *Kay v. USAIR, Inc.*, 1994 WL 406548, *3 (E.D.Pa.Civ.A. No. 93–4856, July 28, 1994), the court ruled that the FAAAA preemption clause does not apply to a claim for personal injuries suffered when a passenger is disembarking from an airplane because "Congress has expressed no intent to preempt traditional state law claims for negligence" and "[p]reemption under [the FAAAA preemption provision] was not intended to be an insurance policy for air carriers against their own negligence." *Id.* (quoting *Margolis v. United Airlines, Inc.*, 811 F.Supp. 318, 323–24 (E.D.Mich.1993)).

In *Torraco v. American Airlines, Inc.*, 1996 WL 6560 (N.D.Ill. No. 94C1852, Jan. 4, 1996), the court held that the plaintiff's negligence claims for personal injuries arising out of the airline's failure to provide him with a wheelchair and an attendant were not preempted. The court reasoned that such services, which were incidental to the plaintiff's ground transportation from the airport terminal, did not represent a distinctive airline "service." The court expressed doubt that the provision of wheelchairs for elderly and disabled passengers significantly affected the airline's ability to compete with other carriers, and pointed out that preemption of personal injury and other similar cases would have the perverse effect of immunizing the airlines from the consequences of their own

negligence. *Id.* The court concluded that the plaintiff's common law negligence claims relating to this service could have had, at most, only a peripheral impact on the airline's distinctive Airline Deregulation Act "services." *Id.* Because allowing these claims would not have significantly altered the airline's competitive position, the court held that the plaintiff's negligence claims were not preempted. *Id.*

And, in *Rivera v. Delta Air Lines, Inc.,* 1997 WL 634500, *5 (E.D.Pa. No. 96CV1130, Sept. 26, 1997), the court held that Congress did not intend "to shield airlines from common law negligence claims," in this case a claim arising from negligent provision of wheelchair assistance. The court was also persuaded that "[a] suit for damages arising from the tortious conduct of an airline does not impede the free market competition of air carriers," and by "the fact that Congress did not include 'safety,' or a similar term, in the preemption clause indicates that it did not intend to preempt state law negligence claims." *Id.*

#### 2. Claims Preempted

Some courts, considering circumstances not dissimilar to plaintiff's, have found tort claims to be preempted. In *Williams v. Express Airlines I, Inc.,* 825 F.Supp. 831 (W.D.Tenn.1993), the court held that federal law preempted a false imprisonment claim against several airlines. *Id.* at 833–34. The plaintiff, who required a wheelchair for mobility, alleged that the defendants left him in an immobile aisle chair for a substantial time and prevented him from boarding his flight. *Id.* at 832. The court focused on the language of the ADA preemption clause and the *Morales* Court's broad interpretation of the words "relating to." *Id.* at 832–33. The court concluded that the provision of wheelchair services to passengers "logically 'relates to' an 'airline service'" and a claim based on the failure to properly provide those services is preempted. *Id.* at 833.

Similarly, in *Howard v. Northwest Airlines, Inc.,* 793 F.Supp. 129, 132 (S.D.Tex. 1992), the plaintiff's wrongful death claim arising out of the airlines' failure to meet and assist an elderly passenger was found to be preempted because the claim related to an airline service.

#### D. State Appellate Court Cases

The appellate courts in at least two states have held that state common law claims for negligence and personal injuries are not preempted by the FAAAA.

In *Kuehne v. United Parcel Service, Inc.,* 868 N.E.2d 870, 877–78 (Ind.Ct.App.2007), the Indiana appellate court reversed the trial court's entry of summary judgment because it concluded that Congress did not intend to displace state personal injury tort law. The court reasoned that the preemption provision did not negate pre-existing state law remedies available at common law. *Id.* The court was persuaded that the absence of a remedy for personal injury claims in the FAAAA was indicative of Congress's intention that such claims survive. In *Atlantic Coast Airlines v. Cook,* 857 N.E.2d 989, 994 (Ind.2006), the Indiana Supreme Court summarily affirmed the court of appeals' ruling that the preemption provision did not preempt a passenger's negligence claim arising out of the airline's decision to allow a passenger who posed an apparent security risk to board a flight.

In *Romano v. American Trans Air,* 48 Cal.App.4th 1637, 1639, 56 Cal.Rptr.2d 428, 429 (1996), the court reversed the trial court's dismissal of the plaintiff's personal injury action premised on the airline's failure to restrain one passenger from attacking another. The court concluded "that the ADA does not so completely preempt the field of airline regulation" as to preclude the claim. *Id.*

Although the case did not involve claims for personal injuries, a division of this court concluded that a pilot's claims of breach of contract, wrongful discharge, and intentional interference with contract did not relate to the airline's prices, routes, or services and therefore were not preempted. *Nokes v. Aspen Aviation, Inc.,* 104 P.3d 247, 248 (Colo. App.2004). In reversing the district court's dismissal of the pilot's claim based on preemption, the *Nokes* division emphasized that the specific allegations of a claim determine

whether or not it is preempted. *Id.* at 251. The division stated,

> Pilot's refusal to disable his aircraft does not concern performance of typical service-oriented tasks, such as ticketing, boarding procedures, provision of food to passengers, baggage handling, and transportation itself. Thus, pilot's prosecution of his claims of breach of contract, wrongful discharge, and intentional interference with contract will not have a direct effect on the airline's performance of those tasks.

*Id.* The division concluded that the connection between the pilot's conduct and the airline's services was, at best, extremely tenuous and that the FAAAA did not preempt his claims. *Id.; see also Osband v. United Airlines, Inc.,* 981 P.2d 616 (Colo.App.1998) (FAAAA did not preempt claims for breach of contract implied in fact, breach of express covenant of good faith and fair dealing, or promissory estoppel claim relating to airline's alleged promise to provide travel benefits as condition of employment); *cf. Belgard v. United Airlines,* 857 P.2d 467 (Colo.App. 1992) (ADA preempted application of state law against handicap discrimination to hiring of pilots).

## IV. Analysis

The ADA does not specify what constitutes an airline "service," and neither the Supreme Court nor our state supreme court has interpreted the term insofar as it applies in personal injury cases. Several factors, though, suggest that the negligent provision of wheelchair assistance to passengers who require such help is not what Congress had in mind when it adopted the preemption provision, and accordingly, demonstrate that Congress did not intend by use of the term "services" to preempt plaintiff's claim. In any event, assuming, without deciding, that the provision of wheelchair assistance falls within the meaning of "services" as used in the preemption provision, we conclude that allowing a negligence claim such as plaintiff's to proceed against an airline has too tenuous, remote, or peripheral an impact on the delivery of airline services to be preempted.

We identify six reasons recognized in the above cases which persuade us that the common law negligence claim alleged here is not preempted.

### A. Congressional Intent

Congress's purpose in enacting the ADA was to foster competition in the airline industry. *Morales,* 504 U.S. at 379, 112 S.Ct. 2031. *Wolens* quoted with approval the government's view of a general standard against which preemption should be considered: "[T]he ban on enacting or enforcing any law 'relating to rates, routes, or services' is most sensibly read, in light of the [Act's] overarching deregulatory purpose, to mean 'States may not seek to impose their own public policies or theories of competition or regulation on the operations of an air carrier.'" 513 U.S. at 229 n. 5, 115 S.Ct. 817. Consistent with *Wolens*'s observation, we agree that the preemption provision was intended to prevent the states from re-regulating airline operations and to allow competitive market forces to function. *See Taj Mahal Travel, Inc. v. Delta Airlines, Inc.,* 164 F.3d 186, 194 (3d Cir.1998). "From that standpoint, the proper inquiry is whether a common law tort remedy frustrates deregulation by interfering with competition through public utility-style regulation. When state law does not have a regulatory effect, it is 'too tenuous, remote, or peripheral' to be preempted." *Id.* (citation omitted). Thus, our focus must be on whether allowing plaintiff's claim would frustrate deregulation by interfering with matters about which airlines compete.

We conclude that it does not. As a general matter, a suit for damages arising from the negligent conduct of an airline does not impede the free market competition of air carriers. *See Sedigh v. Delta Airlines, Inc.,* 850 F.Supp. 197, 200 (E.D.N.Y.1994). More particularly, a claim over whether subcontractors of an airline engaged in unreasonable conduct by pushing a wheelchair too rapidly so as to cause it to tip, or leaving a passenger unattended in a wheelchair for a lengthy time between flights, does not implicate matters about which airlines compete. Such claims are simply too tenuous, remote,

or peripheral to affect airline competition. *See Rowe,* 552 U.S. at 375–76, 128 S.Ct. 989.

### B. "Services"

We are also not persuaded that the term "services" encompasses the conduct plaintiff alleges in his complaint.

Plaintiff urges us to adopt the definition of services outlined in *Charas v. Trans World Airlines, Inc.,* 160 F.3d at 1265–66, where the court considered the contextual placement of the word "services," and concluded:

> Airlines' "rates" and "routes" generally refer to the point-to-point transport of passengers. "Rates" indicates price; "routes" refers to courses of travel. It therefore follows that "service," when juxtaposed [against] "rates" and "routes," refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided.... To interpret "service" more broadly is to ignore the context of its use; and, it effectively would result in the preemption of virtually everything an airline does.

*Id.*

Defendants argue that we should apply the definition of services set forth in *Hodges,* 44 F.3d at 336, as quoted by the supreme court in *Centennial,* 956 P.2d at 595. As noted, the trial court felt it was bound to apply the language of the *Centennial* opinion, which described airline "services," as used in the preemption provision, to include "typical service-oriented tasks such as ticketing, boarding procedures, providing meals and drinks to passengers, and baggage handling." *Id.*

Unlike the trial court, we do not find the *Centennial* court's reference to this definition to be binding precedent on the definition of "services." The *Centennial* court found that the Airport Authority's practices were not preempted, and the court's comment regarding boarding procedures being airline services was not essential for resolving the issue before it. Accordingly, we view the reference as dicta and therefore not a binding definition of "services." *See Main Elec., Ltd. v. Printz Services Corp.,* 980 P.2d 522, 526 n. 2 (Colo.1999).

 Nonetheless, we conclude that under either definition, plaintiff's claim here is not preempted. Following *Nokes,* and focusing on the specific conduct alleged by plaintiff, we conclude that the act of providing wheelchair assistance to passengers is "too tenuous, remote, or peripheral" to the provision of airline services to come within the intent of the preemption provision. *See Morales,* 504 U.S. at 390, 112 S.Ct. 2031. While states may not regulate an airline's economic policies or the administration of services in a way that affects airline competition, they may require airlines to exercise reasonable care in the delivery of services. *See Hodges,* 44 F.3d at 336–37 (adopting limited definition of "services" and allowing negligence claim); *Trinidad v. American Airlines, Inc.,* 932 F.Supp. 521, 526 (S.D.N.Y.1996) (same); *Butcher v. City of Houston,* 813 F.Supp. 515, 517 (S.D.Tex.1993) (preemption provision only pertains to distinctive airline services).

Defendants argue that plaintiff's citation to federal regulations relating to the provision of wheelchair services to disabled airline passengers acknowledges that these services are within the scope of the preemption provision. We disagree. The regulations may serve as a standard of care for the airline industry, but they do not purport to define the services referred to in the preemption provisions of the ADA and the FAAAA.

### C. Congress Did Not Intend To Preempt Personal Injury Claims Relating to Safety

Courts have stressed that Congress' silence on the subject of safety in the preemption provision suggests that Congress did not intend to preempt personal injury claims relating to safety. *See, e.g., Dudley v. Bus. Express, Inc.,* 882 F.Supp. 199, 206 (D.N.H. 1994) ("This court's own research indicates that since Congress omitted 'safety' from the language of section [41713], personal injury actions premised on state law which seek compensation for an airline's alleged negligence fall outside the sweep of the preemption provision."); *see also Rivera v. Delta Air Lines, Inc.,* 1997 WL 634500 at * 5 (E.D.Pa. No. CIV.A.96–1130, Sept. 26, 1997) (Congress' omission of "safety" or a similar term

in the preemption provision is persuasive evidence that Congress did not intend to preempt state law negligence claims). "This silence takes on added significance in light of Congress' failure to provide any federal remedy for persons injured by such conduct. It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct." *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 251, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984) (citing *United Constr. Workers v. Laburnum Constr. Corp.*, 347 U.S. 656, 663–64, 74 S.Ct. 833, 98 L.Ed. 1025 (1954)).

### D. Insurance Requirements

The FAAAA requires airlines to maintain either liability insurance or self-insurance. 49 U.S.C. § 41112(a) (1998). Such a requirement would be "pointless," unless Congress expected that some state tort actions would survive the enactment of the ADA. *Charas,* 160 F.3d at 1265; *accord Hodges,* 44 F.3d at 338 ("A complete preemption of state law [claims for personal injury] would have rendered any requirement of insurance coverage nugatory."). In *Hodges,* the court distinguished between activity related to "services" furnished by an airline, and conduct connected with "operation and maintenance" of the aircraft. The court reasoned that a carry-over provision of the Federal Aviation Act requiring airlines to carry liability insurance covering personal injuries "resulting from the operation or maintenance of the aircraft," 49 U.S.C. § 41112(a) (formerly 49 U.S.C.App. § 1371(q)), indicated Congressional intent to exclude such claims from preemption and leave them within the scope of state common law. *Hodges,* 44 F.3d at 338–39. The *Taj Mahal* court also found that "the continued existence of statutorily mandated liability insurance coverage is strong evidence that Congress did not intend to preempt state tort claims." 164 F.3d at 194. The court went on to state, "It would make little sense to require insurance to pay for bodily injury claims if airlines were insulated from such suits by the preemption provision." *Id.*

### E. Savings Clause

■ Contrary to defendants' argument, the fact that Congress left in place the "sav-ings clause" contained in the ADA's predecessor legislation, the Civil Aeronautics Act, § 1106, 52 Stat. 1027 (1938) (current version at 49 U.S.C. § 40120(c)) ("A remedy under this part is in addition to any other remedies provided by law."), is a persuasive factor in deciding whether state negligence law is preempted. We conclude that the retention of the "savings clause" in the FAAAA is evidence of Congressional intent not to preempt state personal injury actions.

Indeed, in *Wolens,* the Supreme Court, in ruling that state law contract claims survived the enactment of the ADA, remarked that such a conclusion "ma[de] sense of Congress' retention of the FAA's saving clause." 513 U.S. at 232, 115 S.Ct. 817; *see also Charas,* 160 F.3d at 1265 ("[T]he savings clause ... read together with the preemption clause, evidences congressional intent to prohibit states from regulating airlines while preserving state tort remedies that already existed at common law, providing that such remedies do not significantly impact federal deregulation."). *But see Morales,* 504 U.S. at 385, 112 S.Ct. 2031 (describing the savings clause as a general saving clause that cannot supersede the specific preemption provision).

We also find the reasoning in *Taj Mahal* to be persuasive on the importance of the savings clause:

> [P]reemption is inappropriate in the tort field for an eminently practical reason. As *Wolens* pointed out, the Department of Transportation has neither the authority nor the apparatus required to superintend contract disputes. That observation applies equally to tort disputes. It is significant that Congress retained the savings clause of the predecessor statute, which preserved "the remedies now existing at common law or by statute."

164 F.3d at 194 (citation omitted).

### F. No Remedy for Personal Injury Claims

■ Finally, the fact that the FAAAA does not contain a remedy for personal injury claims supports an inference that Congress expected state tort actions to survive. Indeed, several courts have considered Congress's failure to provide a remedy in the

ADA persuasive evidence of its lack of preemptive intent. *See Hodges,* 44 F.3d at 338 (citing *Silkwood,* 464 U.S. at 251, 104 S.Ct. 615). Likewise, in *Margolis v. United Airlines, Inc.,* the court, in rejecting the airline's express preemption argument, wrote: "Because Congress has not provided any remedy for an airline passenger who suffers personal injury due to the negligence of the airline and its employees, preemption should not apply to a claim under common law negligence to recover for personal injury." 811 F.Supp. at 324–25.

## V. Conclusion

We are persuaded, based upon the rationale discussed herein, that plaintiff's common law claim alleging negligence by defendants in providing wheelchair assistance to an airline passenger in deboarding and transferring him to another flight is not preempted by 49 U.S.C. § 41713(b)(1). Therefore, we reverse the trial court's judgment and order of dismissal and remand the case with directions to reinstate plaintiff's amended complaint.

Judge LOEB and Judge RUSSEL concur.